No. 23089.

Joe Segura *v.* The People of the State of Colorado.
(431 P.2d 768)

Decided September 11, 1967.     Rehearing denied October 2, 1967.

ROBERT DUNLAP, DONALD P. MACDONALD, L. THOMAS WOODFORD, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

THE above named plaintiff in error, hereinafter referred to as the defendant, was convicted of first degree murder and the jury fixed the penalty at death. Judgment entered on the verdict and on writ of error to this court the judgment was affirmed. *Segura v. The People,* 159 Colo. 371, 412 P.2d 227. Petition for rehearing was denied April 4, 1966.

Execution of the judgment was stayed for several months by executive order pending the results of a vote of the people on the question of whether the death penalty should be abolished in Colorado. Following the election a new date for execution of the judgment was set and thereupon the defendant filed a motion in the district court of Pueblo county for relief under Colo. R. Crim. P. 35(b). This motion was filed on June 8, 1967. On June 15, 1967, a hearing was held by the trial court

on the motion, over the objection of counsel for defendant who asked for a continuance, which request was denied by the trial court. On June 21, 1967, the trial court denied the motion for post-conviction relief.

Counsel for the defendant presents argument for reversal of the judgment denying post-conviction relief under seven captions, which we summarize as follows:

(I) The trial court abused its discretion in denying a continuance requested by the defendant.

(II) The statute authorizing jurors to fix the penalty at death or life imprisonment in first degree murder cases deprives the accused of due process of law, and the "single verdict" procedure prevents jurors from exercising their discretion in any "rational manner."

(III) The statute referred to in (II) above violates the 14th Amendment to the Constitution of the United States in that it deprives the defendant of equal protection of the law.

(IV) The statute authorizing the death penalty, as applied to defendant, violates the constitutional prohibition against "cruel and unusual" punishment.

(V) The death penalty was imposed upon the defendant notwithstanding that the statute prevents such a penalty in cases based upon circumstantial evidence alone.

(VI) The defendant was deprived of a fair trial in the first case because the trial court permitted the district attorney to follow the established practice of excusing jurors for cause, who could not in any case for reasons of conscience inflict the death penalty.

(VII) Defendant was prejudiced by pre-trial publicity as well as that given the trial of the case.

Counsel for the defendant has filed a brief consisting of fifty-four legal size typewritten pages and has made reference to eighty opinions of this and other courts. In addition to these decided cases ten lengthy articles from various legal journals are called to our attention. Eight more publications are cited which are classified

as "Books and Miscellaneous" dealing for the most part with philosophical discussions bearing upon the question of whether any useful purpose is served by imposition of the death penalty. In legislative halls these volumes might contain matters proper for consideration, but in this court we are bound by the law as we find it.

The main thrust of the argument by counsel for the defendant is that the statute which requires the jury in a single verdict to determine the question of guilt and also whether life imprisonment or death shall be imposed as a penalty, denies the defendant due process of law and equal protection of the law. The numerous law review articles and other publications referred to under the caption "Books and Miscellaneous" deal generally with the question of whether evidence concerning the defendant's background, which is relevant solely to the aggravation or mitigation of punishment, should be placed before the jury during the trial. It is argued that to compel the presentation of this evidence would result in prejudice to defendant's right to decline to testify. Admittedly the Colorado statute requires the defendant to choose whether he will take the stand himself in an attempt to mitigate the crime, or to decline to testify. There is nothing in the statute which prevents the introduction of relevant evidence to establish mitigating circumstances. Such circumstances can be shown by witnesses other than the defendant. At the trial of defendant on the issue of guilt, no evidence whatever was offered on his behalf. It may well be that a better method of determining punishment could be devised. Numerous states in the nation follow the Colorado practice. We know of no jurisdiction in which it has been held that this practice purports to deny constitutional rights.

An examination of the record now before us discloses that counsel for the defendant, in the Rule 35(b) proceeding, called three witnesses and introduced a letter from a probation officer at a federal penitentiary.

William Hawkins, a newspaper photographer, testified that a photograph of Segura and a deputy sheriff taken outside the courtroom was published by the newspaper which employed him. He further testified that a photograph of Mrs. Segura which he took also was published. Cindy Parmenter, a press reporter, testified that Mrs. Segura's picture was published with a "cut line" that she was a witness at the trial. She also testified concerning the coverage given the trial: "It was just average coverage, same coverage you give any trial." The exhibits relative to press coverage which were offered in evidence fail to show anything which could have deprived the defendant of a fair trial.

The defendant took the stand and testified that he had served three terms in the federal penitentiary; that his last confinement extended over a period of seven years during which time he sent his family (wife and seven children) about $50 per month from his earnings at the "shoe industry" at the penitentiary. He further testified that when he was released from prison he learned that while he was away his wife had gone out with other men.

Robert Mahaffey, a television news reporter, testified that he took some film and wrote news stories concerning the events on which the murder charge was based. In describing this news coverage he said, "* * * I as a newsman would consider average coverage of a murder trial."

██ Upon the record before us we hold that the trial court did not abuse its discretion in denying the application for continuance. There is nothing in the record to indicate that the defendant was deprived of a fair trial by reason of publicity given the events involved either before or during the trial.

We have carefully considered all other assignments of error and find them to be without merit.

The judgment is affirmed and it is the further order of this court that the execution of the judgment and

sentence heretofore entered by the district court of Pueblo county be carried out during the week beginning midnight Saturday, October 14, 1967.