## No. 23746.

THE PEOPLE OF THE STATE OF COLORADO EX REL. JAMES D. McKEVITT, DISTRICT ATTORNEY OF THE SECOND JUDICIAL DISTRICT, STATE OF COLORADO v. THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT, STATE OF COLORADO, AND ALBERT T. FRANTZ, ONE OF THE ACTING JUDGES THEREOF.

(447 P.2d 205)

Decided November 15, 1968.

JAMES D. MCKEVITT, District Attorney, Second Judicial District, GREGORY A. MUELLER, Assistant, JAMES W. CREAMER, JR., Chief Deputy, FREDERICK A. FIELDER, JR., Deputy, JAMES M. DeRose, Deputy, for petitioner.

WINNER, BERGE, MARTIN & CLARK, FRED M. WINNER, for respondent.

EDWARD H. SHERMAN, Public Defender, City and County of Denver, TRUMAN E. COLES, Deputy, DAVID G. MANTER, Assistant, for intervenor.

MORGAN SMITH, Public Defender Adams County, amicus curiae.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

BY direct information Clarence R. English was charged in the Denver District Court with the crime of murder in the first degree. In response thereto, the public defender on behalf of English filed what he labeled as a "Motion for Bifurcated Trial." In that motion English asked that there be separate trials on the issue of guilt and punishment, and that these separate trials be held before different juries. In other words, English sought that he first be tried on the issue raised by his plea of not guilty to the murder charge and, in the event he should be adjudged guilty of murder in the first degree, that a different jury should then be impaneled to hear evidence in aggravation or mitigation and to determine the penalty to be suffered by him, namely either life imprisonment or death.

The trial court denied the aforementioned motion for a bifurcated trial, but nonetheless entered an order that there be separate trials on the issues of guilt and punish-

ment and that these separate trials should be before the *same* jury. The trial court was apparently of the view that C.R.S. 1963, 40-2-3 (1) precluded separate trials on the issues of guilt and punishment by separate and different juries, but did not preclude a separate trial of each issue before the same jury. In any event, the trial court determined that it was within its power to direct that English be given separate but successive trials on the issues of guilt and punishment by the same jury.

It was at this juncture that the district attorney on behalf of the People instituted in this court the present original proceeding directed against the Denver District Court and the acting district judge who entered the aforementioned order. In the petition the district attorney alleged that the trial court had misinterpreted the aforementioned statute and that the trial court in thus ordering separate trials on the issues of guilt and punishment before the same jury was acting without its jurisdiction. We issued a rule to show cause and the trial court, represented by counsel of its own choosing, has now filed its response thereto. Upon motion English was permitted to intervene and he is represented in these proceedings by the public defender. Furthermore, upon request, this court permitted oral argument, though such is not the usual practice in original proceedings. It perhaps should be noted that in this court English does not challenge the propriety of the action taken by the trial court, even though English was not granted all that he sought in his motion for a bifurcated trial. On the contrary, English and counsel for the trial court are in complete accord and both argue that the trial court had the power to order separate trials before the same jury on the two issues of guilt and punishment.

Resolution of this controversy requires that we first determine whether the applicable statute precludes or permits separate trials by the same jury on the issues of guilt and punishment. For only if we determine that the pertinent statute *prohibits* the order entered by the

trial court will we be concerned with the constitutionality of the statute. Let us then examine the statute from which the present controversy springs.

C.R.S. 1963, 40-2-3 (1) reads as follows:

"... The jury before which any person indicted for murder shall be tried, shall, if it find such person guilty thereof, designate by its verdict whether it be murder of the first or second degree, and if murder of the first degree, the jury shall in its verdict fix the penalty to be suffered by the person so convicted, either at imprisonment for life at hard labor in the penitentiary, or at death. . . ."

It is quite true that the aforesaid statute does not, in so many words, expressly preclude or, on the other hand, expressly permit separate trials before the same jury on the issues of guilt and punishment. But our analysis of the statute leads us to conclude that the legislative intent was that there be a so-called unitary trial of the issues of guilt and punishment. The statute itself declares that "the jury" shall designate "by its verdict" whether the accused is guilty of murder in the first or second degree and, if it be murder of the first degree, then, "the jury" shall also determine "in its verdict" the penalty to be suffered. In our view the language used rather clearly negates the concept of separate verdicts resulting from separate trials on the issues of guilt and punishment, regardless of whether the separate trials be before the same or different juries.

█ We are not here concerned with what would be the better practice. Our concern relates only to ascertaining the legislative intent inherent in the statute under consideration. We believe that our determination that the statute *precludes* separate trials on the issues of guilt and punishment, even though the trials would be before the same jury, truly reflects the legislature's intent on this matter. Most certainly it squares with the practice that has been followed in the state for nearly a hundred years. And if we have by some slight chance

misconstrued the legislature's intent in this regard, our "error" could, of course, be quickly "corrected" at the next session of our General Assembly. But, as indicated, we are confident that the interpretation which we give this statute correctly mirrors the legislative intent on this particular matter.

In our view *Jones v. People*, 155 Colo. 148, 393 P.2d 366 lends considerable support to our determination that C.R.S. 1963, 40-2-3 (1) *precludes* separate trials on the issues of guilt and punishment, even though the two trials were to be had before the same jury. In that case we stated that "resolution of the issue of guilt and the extent of punishment must be a unitary action on the part of the jury, that together they form the verdict." Our holding in *Jones* was that C.R.S. 1963, 40-2-3 (1) *precludes* separate trials on the issues of guilt and punishment by separate and different juries. And the reasoning expressed therein strongly suggests that the statute also *precludes* separate trials on the issues of guilt and punishment, even though the two were to be had before the same jury. To illustrate, in the *Jones* case we noted that four states, namely California, Connecticut, New York and Pennsylvania had then recently adopted statutes under which capital cases were to be tried "under what is designated as a two trial or split-verdict system." In connection therewith we opined, and quite properly so, as follows:

". . . That the legislatures of those four states deemed it necessary to adopt legislation permitting the trial of the issue of guilt first and the question of penalty second is persuasive of the fact that, prior to such enactment, this could not be done."

Paraphrasing, then, the foregoing quotation to the instant controversy, the fact that our legislature has not adopted legislation permitting the trial of the issue of guilt first and the question of penalty second is persuasive of the fact that without such an enactment, "this could not be done."

Having concluded then that C.R.S. 1963, 40-2-3(1) requires a so-called unitary trial with a single verdict, namely one trial, of necessity before the same jury, on the issues of guilt and punishment and precludes separate trials of these issues, even before the same jury, the remaining problem concerns the constitutionality of the statutes. It is contended that the statute when thus construed violates English's various rights granted him by article II, sections 18 and 25 of the Colorado constitution and the fifth and fourteenth amendments to the United States Constitution. It is argued, for example, that English has a constitutional right not to incriminate himself to the end that in a trial to determine his guilt or innocence he need not take the witness stand and may remain silent. At the same time, it is claimed, English also has a constitutional right to so-called allocution, namely, to present evidence in mitigation of the sentence, and that of necessity both of these very important constitutionally protected rights cannot be fully exercised in a unitary trial. It is also noted that in 1965 the General Assembly amended C.R.S. 1963, 40-2-3 to the end that under certain conditions a defendant may now plead guilty to murder in the first degree, in which event the judge — not the jury — shall fix the penalty to be imposed. This is said to be a denial of "equal protection" to the defendant who persists in his pleas of not guilty and thereby necessitates a jury trial wherein the jury — and not the judge — shall fix the punishment.

As already indicated, we are not concerned with whether a so-called unitary trial or a bifurcated trial, be it one before the same or different juries, is the preferred method for trying a first degree murder charge. Our legislature has decreed a unitary trial, and hence our only problem is whether that particular mode of trying a first degree murder case offends the several constitutional provisions referred to above. In our view of the matter the unitary trial with a single verdict will

not offend any of English's various constitutional rights.

We deem *Segura v. People,* 163 Colo. 491, 431 P.2d 768 to be virtually dispositive of this phase of the controversy. In that case we considered — and rejected — virtually the same argument which is now advanced in behalf of English. In so doing we made the following pertinent comment:

"The main thrust of the argument by counsel for the defendant is that the statute which requires the jury in a single verdict to determine the question of guilt and also whether life imprisonment or death shall be imposed as a penalty, denies the defendant due process of law and equal protection of the law. * * * * It is argued that to compel the presentation of this evidence would result in prejudice to defendant's right to decline to testify. Admittedly the Colorado statute requires the defendant to choose whether he will take the stand himself in an attempt to mitigate the crime, or to decline to testify. There is nothing in the statute which prevents the introduction of relevant evidence to establish mitigating circumstances. Such circumstances can be shown by witnesses other than the defendant. At the trial of defendant on the issue of guilt, no evidence whatever was offered on his behalf. It may well be that a better method of determining punishment could be devised. Numerous states in the nation follow the Colorado practice. *We know of no jurisdiction in which it has been held that this practice purports to deny constitutional rights.*" (Emphasis supplied.)

It should be pointed out that Segura later applied to the federal courts for the relief which this court denied him in *Segura v. People, supra.* And the United States Court of Appeals, Tenth Circuit, only recently upheld the action of the United States District Court wherein the latter court, after hearing, denied Segura's petition for relief under 28 U.S.C. § 2254. See *Segura v. Patterson,* 404 F.2d 249 No. 9998, decided on October 1, 1968. In *Segura v. Patterson, supra,* the United States Court of

Appeals held, among other things, that there is no constitutionally protected right to allocution; that the single-verdict procedure does not "necessarily chill" the exercise of basic constitutional rights; that the federal constitution does not compel a two-part trial; and that for a state to permit a jury to fix the penalty in a first degree murder case, when in all other instances the penalty is imposed by a judge, after pre-sentencing hearings, is not an unreasonable or arbitrary classification.

The rule is therefore made absolute and the respondent trial court is directed to vacate its order that English be given separate trials before the same jury on the issues of guilt and punishment, with further proceedings in the case of the *People v. English*, criminal action No. 58287, now pending in the Denver District Court, to be consonant with the views herein expressed.

MR. JUSTICE PRINGLE specially concurs.

MR. JUSTICE PRINGLE specially concurring:

In *Jones v. People*, 155 Colo. 148, 393 P.2d 366, the majority of this Court held that the fact that four states deemed it necessary to adopt legislation permitting the trial of the issue of guilt first and the question of penalties second is "persuasive of the fact that, prior to such enactment this could not be done. * * *"

Since the enactment of that opinion, the legislature has met four times and has not seen fit to materially change the wording of the statute. Therefore, even though I dissented in *Jones v. People, supra*, I feel that the legislature has adopted the interpretation placed upon the statute by the Court and I am therefore now bound by the ruling in *Jones*.

I therefore specially concur in the opinion of the Court.