## No. 24252

### Carl N. Jorgensen v. The People of the State of Colorado
(495 P.2d 1130)

Decided March 27, 1972.   Opinion modified and as modified rehearing denied April 17, 1972.

10

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, William D. Neighbors, Assistant, Truman E. Coles, Assistant, David A. Fogel, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Carl N. Jorgensen was convicted of murder in the second degree in the District Court of the City and County of Denver. He seeks reversal of this judgment of conviction, asserting prejudicial error was committed in several respects as hereinafter discussed. We affirm the judgment.

The record shows that shortly before midnight on January 7, 1968, the dead body of William J. M. Carruthers was discovered in an apartment which had been occupied by him and the defendant Jorgensen. Carruthers died of a gunshot wound in the head from a 12-gauge shotgun owned by Jorgensen.

The details of the slaying were given to investigating officers by Jorgensen, who confessed to the killing. Jorgensen had been unemployed and was without funds. He recounted how he was befriended by Carruthers and invited to occupy living quarters with Carruthers at 1355 York Street in Denver. On the fatal day, Jorgensen had spent the afternoon and early evening in the apartment, watching TV and drinking beer, whiskey and gin. He was feeling "pretty high" when Carruthers returned and commenced making homosexual advances toward him. In his statement to the police, Jorgensen described his tendency to anger easily when drinking. Being revulsed by Carruthers' approach, he became very angry. He told Carruthers to get him a cup of coffee and when Carruthers got up to do so Jorgensen shot him in the back of the head.

The record shows that Jorgensen contacted Phillip Longo, a friend at Lowry Air Force Base, seeking his assistance in getting out of the state. Longo agreed to meet Jorgensen and to turn over to him an automobile which he had previously

borrowed from Carruthers. Longo failed to appear at the designated meeting place. Instead, he notified the police.

Jorgensen was found drinking coffee at a drive-in restaurant. When the police approached him, he was asked his name, to which he responded: "I'm the one you're looking for." Upon again being asked his name, he replied, "Carl Jorgensen." He was then placed under arrest and taken to the police station. There he was placed in the custody of Detective H. J. Groginsky who advised him of his *Miranda* rights.

The advisement form read by Groginsky concluded with the question: "Do you understand each of these rights I have read to you?" — to which Jorgensen responded in writing, "Yes." He thereafter signed the advisement form on a line below the last question and answer. The advisement form contained the further statement: "Knowing my rights and knowing what I am doing, I now wish to voluntarily talk to you." Underneath this last statement appeared a second signature line whereon Jorgensen again signed his name. Detective Groginsky offered Jorgensen the use of a telephone to call an attorney, a member of his family, or anyone else he chose. This offer was declined by Jorgensen who stated that he did not want to make any calls at that time.

Thereupon, Jorgensen gave an oral statement to Detective Groginsky, who made handwritten notes of Jorgensen's responses. Jorgensen agreed to give a formal statement before a shorthand reporter. This was accomplished between the hours of 3 and 4 a.m. of that morning. Again, Groginsky advised Jorgensen and Jorgensen again acknowledged he understood his *Miranda* rights. The statement was transcribed and an original and copy were corrected and signed by him.

All of the foregoing statements of Jorgensen were admitted into evidence at the trial.

Jorgensen testified in his own behalf and he related the events occurring before and after the fatal shooting in substantially the same detail as given to the police. He stated that he was intoxicated, very angry and "shook-up" when Carruthers made the advances toward him; and that he was mentally in a dream or trance-like state and did not

remember the actual shooting. He told of his contact with Phillip Longo and of his unsuccessful attempt to obtain the automobile to leave the state. He described his subsequent apprehension and discussed the giving of the statements at the police station.

The jury was instructed on all degrees of homicide and returned its verdict of guilty to second-degree murder.

## I.

Before the commencement of the trial, defendant moved for a bifurcated trial on the guilt issue and the punishment issue, in view of the first-degree murder charge against him. He alleges that denial of this motion was prejudicial error. This proposition was disposed of in *People v. District Court,* 167 Colo. 221, 447 P.2d 205. The identical question was there presented and this Court held that a bifurcated trial was neither statutorily permitted nor constitutionally required. No new arguments have been here presented which require this Court to overrule *People v. District Court, supra,* and we decline to do so. Furthermore, the issue presented is moot, as the jury here convicted Jorgensen of second-degree murder and the matter of sentence was not involved in the jury's determination.

## II.

Defendant next contends the trial court erred in admitting into evidence statements of the defendant which were allegedly not voluntarily made and not made in compliance with the due process clause of the Fourteenth Amendment to the United States Constitution. He argues that the "totality of circumstances" surrounding the in-custody interrogation show the statements were not voluntary and that there was no intelligent waiver of his rights.

The trial court conducted an extensive *Jackson v. Denno* hearing. It specifically found that the initial declaration of Jorgensen, when asked his name prior to his arrest — "I'm the one you're looking for" — was non-custodial and voluntarily made, and therefore not subject to the *Miranda* requirements. We agree. *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974; *People v.*

14

*Smith,* 173 Colo. 10, 475 P.2d 627. *See also, United States v. Charpentier,* 438 F.2d 721 (10th Cir. 1971).

■ Concerning the in-custody statements, the court found they were voluntarily and intelligently made by Jorgensen, with full knowledge of his constitutional rights, after he had been fully advised, and that he affirmatively waived his right to remain silent and his right to counsel during the custodial interrogation. There is ample competent evidence to support these findings. The submission of the inculpatory extrajudicial statements to the jury (under proper instructions as was done here) under the circumstances of this case was not error.

### III.

■ Complaint is made that the trial court admitted into evidence, in addition to the original copy of the formal statement, a duplicate copy which had been likewise corrected and signed by the defendant. The effect of this was to permit the jury to consider two identical confessions to the homicide. The district attorney offered the duplicate copy as tending to further prove the voluntariness of the statement, as it would be unlikely that a defendant would have twice read, corrected .and signed an involuntary statement. The evidence was merely cumulative and we find no abuse of discretion in its admission. *Bradley v. People,* 157 Colo. 530, 403 P.2d 876.

### IV.

Jorgensen next argues that judgment of acquittal should have been granted at the close of the People's case and at the conclusion of all of the evidence, for the reason that the identity of the victim, William J. M. Carruthers, had not been proven beyond a reasonable doubt. He contends that the identity of the slain person is an element of the corpus delicti which must be established in a homicide case; and that a conviction based upon the uncorroborated confession of the accused cannot stand absent proof of the corpus delicti beyond a reasonable doubt.

■ We disagree that the identity of the victim is an element of the corpus delicti. This Court has defined corpus

delicti in a homicide case as composed of two elements only: first, death as a result of an act performed or a wound inflicted; and, second, the criminal agency of another as the means. *Bruner v. People,* 113 Colo. 194, 156 P.2d 111; *Lowe v. People,* 76 Colo. 603, 234 P. 169. In the present case, the death and the criminal agency of another as the cause were clearly established by the officers investigating the crime scene and by the coroner. We decline to engraft upon our previous pronouncements the third element of the identity of the victim, as urged by the defendant.

We note that no serious contention was raised at trial that the victim was not the person named in the information. The record shows that facts and circumstances were proven, over and beyond those contained in the defendant's confession, from which the jury could reasonably infer that the victim of a homicide was in fact the person named in the information. Particularly significant is the testimony on cross-examination of the coroner concerning the autopsy performed on the victim, where defense counsel several times referred to the victim's identity as Mr. Carruthers. More importantly, however, the accused's confession clearly established the identity of the victim, William J. M. Carruthers. We find no merit to this assignment.

V.

Defendant next assigns error to the language of the stock instruction given on the presumption of innocence, which stated, "* * * This rule of law * * * is not intended to aid anyone who is in fact guilty of crime, to escape, * * *." This instruction was criticized in *Martinez v. People,* 172 Colo. 82, 470 P.2d 26. It was there suggested that trial courts in the future delete the offending qualifying language and give a more acceptable instruction, as set forth in that decision. However, the giving of the stock instruction, because of its historical use, did not constitute reversible error. *See also, Renfrow v. People,* 176 Colo. 160, 489 P.2d 582.

VI.

Defendant next quarrels with instruction No. 14,

given by the court over defendant's objection. This instruction related to the multiple counts of homicide to be considered by the jury and to the required burden of proof as to each element of each count. The defendant contends this instruction was misleading and confusing and subject to being misunderstood by the jury.

We have carefully examined this instruction and, while conceivably it could be improved by rephrasing in certain particulars, it adequately states the basic requirement that before the jury can convict a defendant on any one of the counts of homicide, it must be satisfied that each and every material allegation of that count has been proven beyond a reasonable doubt. In light of all of the instructions given by the court, taken and read together as a whole, we believe the jury was properly charged in this case.

## VII.

Defendant's final argument is directed to the order of the trial court permitting the prosecution to have present in the courtroom during the trial Detective Groginsky, as the state's advisory witness, whereas other witnesses were sequestered. This Court has often approved of this practice, holding that such is a matter within the sound discretion of the trial court. This Court will not interfere in the absence of a showing of abuse of discretion. *Jordan v. People,* 155 Colo. 224, 393 P.2d 745; *Cruz v. People,* 149 Colo. 187, 368 P.2d 774; *Martinez v. People,* 129 Colo. 94, 267 P.2d 654.

The judgment is affirmed.