No. 24090

## Raymond Charles Early v.
## The People of the State of Colorado
(496 P.2d 1021)

Decided April 17, 1972.

168

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, William J. Chisholm, Public Defender, City and County of Denver, Truman E. Coles, Deputy, David E. Manter, Assistant, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant, Raymond Charles Early, upon his plea of not guilty, was found guilty of first-degree murder and sentenced to life imprisonment in the Colorado State Penitentiary. Upon the denial of his motion for new trial, the defendant brought the matter here for review by writ of error.

At approximately 1:00 a.m., June 15, 1968, Lester Pearl Harris, a Denver cab driver, was shot and killed in northeast Denver. Two persons in an adjacent house heard the shots, looked out and observed a woman, Ms. Harris, staggering in the street as a Yellow Cab, driven by a "small Negro" man, pulled away. One of the witnesses called the police. The witnesses observed the cab and driver twice subsequently; once when the cab drove slowly past; and a second time when the cab parked and its driver walked to where Ms. Harris had collapsed and then proceeded up the street.

The police came to the scene, examined the body, and located the cab where it had been left by the "small Negro" man. They collected numerous fingerprints from the interior of the cab. From a purse, found open and empty on the front seat of the cab, only the fingerprints of the victim were identifiable. The other prints taken from the cab's interior were incomplete, but similar to those of the defendant. However, the police fingerprint expert was not able to "make them." Although similar, they were incomplete and could not be positively identified with those of defendant in the police department files. A single palm print, however, taken from the left front door handle was determined not to be that of the victim. The police department files did not contain the defendant's palm print.

At this point a Detective Groginsky enters the investigation. In addition to the inconclusive fingerprints found in the interior of the cab, and the palm print lifted from the door handle, fellow officers in the police department had recorded in a report the following information:

(1) At approximately 10 o'clock p.m., June 14, 1968, the defendant was seen at the Dahlia Shopping Center, following a woman, with "bills" in her hand, who had just emerged

from a market; that he may have had a gun;

(2) That the suspect had been in prior trouble, and had been in mental institutions;

(3) That he lived with his sister, whose house was within a block or two of the scene of the homicide.

Armed with this information, Groginsky proceeded to the sister's house. Early was there. Groginsky orally advised him of his *Miranda* rights and permitted him to call the public defender's office. The defendant, effectively under arrest, accompanied Groginsky to his office in the police department. The defendant was again given the *Miranda* warnings. Groginsky explained to the defendant that a murder had occurred, that a palm print had been lifted from the left front door handle of the victim's cab and that he desired to take Early's palm print. It was taken.

After the palm prints were compared, the defendant was advised that they matched. He was then presented with a written advisement form which he signed. At this point Groginsky obtained a warrant to search for the .22 caliber pistol at the premises where defendant lived. The search resulted in the seizure of the pistol, which was determined to be the murder weapon.

The defendant asserts ten errors occurred during the course of the trial as grounds for reversal. We will discuss only one in depth because of its constitutional aspects. The others will be treated summarily. In toto, we find no error of sufficient magnitude to require the reversal of the judgment of conviction.

It is asserted that the trial "court erred in its denial of defendant's motion to suppress all evidence with regard to the .22 caliber pistol and defendant's palm print, since the same were the fruits of an unlawful search and seizure." This raises Fourth Amendment questions. The first question, chronologically, relates to the seizure of the defendant's palm print, which was obtained without a warrant. The second question relates to the seizure of the pistol which was seized by virtue of a search warrant. The validity of the second depends on the validity of the first.

■■ The Fourth Amendment contains two clauses: [1] "The right of the people to be secure in their persons, . . . against *unreasonable* searches and seizures. . . and [2]. . . no warrant shall issue, but upon *probable cause*, . . ." (Emphasis added.)

We are concerned with both clauses. However, the defendant does not attack the sufficiency of the affidavit upon which the issuance of the warrant to search for and seize the pistol was based. He argues that the clause [1] was violated and, as a consequence, his palm print was unlawfully obtained. The search warrant was based primarily on the fact that the palm print on the left front door handle of the cab matched that obtained from the defendant as the result of an unreasonable search and seizure, thus the warrant was the product of a "poisonous tree."

■■ The United States Supreme Court has on numerous occasions made it clear that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. *See also People v. Nelson,* 172 Colo. 456, 474 P.2d 158; *Moore v. People,* 171 Colo. 338, 467 P.2d 50.

I.

■■ As indicated above, we are primarily concerned with the search and seizure which resulted in obtaining the palm print. This requires testing the seizure of the person and the taking of the palm print against clause [1] which proscribes "unreasonable searches and seizures."

At the time that Groginsky initially detained the defendant for the making of his palm prints, he knew that a brutal murder had been committed in the immediate vicinity of defendant's residence; he had information from his fellow officers that the defendant's fingerprints were "similar" to those found in the victim's cab; that the defendant had been in trouble on previous occasions; that within three or four hours prior to the homicide, he was following a woman with money in her hands at a nearby shopping center; that he may

have had a hand gun at that time; and that there were no palm prints of the defendant in the police files.

The foregoing are sufficient circumstances to justify the limited incursion on the defendant's privacy in this case. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676; *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. There was reason to believe that the palm printing of the defendant would aid in the apprehension of the unknown perpetrator of the homicide—or possibly eliminate him as a suspect.

In *Davis v. Mississippi, supra,* it was stated in the majority opinion:

"Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment *even though there is no probable cause in the traditional sense. . . .*" (Emphasis added.)

We must, however, go the next step and determine whether the *warrantless* arrest for the purpose of palmprinting was *reasonable.*

In *Davis,* Mr. Justice Brennan set forth factors which differentiate fingerprint detentions from the usual arrest situation.

". . . Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass any individual, since the police need only one set of each person's prints. Furthermore, fingerprinting is an inherently more reliable and effective crime-solving tool than eyewitness identifications or confessions and is not subject to such abuses as the improper line-up and the 'third degree.' Finally, because there is no danger of destruction of fingerprints, the limited

detention need not come unexpectedly or at an inconvenient time. . . ."

Although it is clear the court contemplated a detention premised on a warrant, the reasonable detention described in the quotation resembles the arrest in this case. Nor was this the "dragnet" type of operation that occurred in *Davis,* nor do we have a confession wrongfully obtained or property wrongfully seized. Rather, it was an investigation focused on a specific individual and the "evidence" can be identically reproduced and lawfully used in a subsequent trial. *See* dissenting opinion of Mr. Justice Stewart, *Davis v. Mississippi, supra.* Under the circumstances, we conclude that the arrest of the defendant for palmprinting was reasonable and the evidence obtained thereby was properly received in evidence.

II.

At some point in the interrogation of the defendant following the determination that it was Early's palm print on the left front door of the Yellow Cab, the defendant made a statement to the effect that he had not been near a Yellow Cab in two and a half years. The defendant claims that this statement was made after his lawyer told Groginsky that he had advised the defendant to say nothing. The defendant contends that this statement was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Also, that the *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, principle operates to exclude it. The evidence relating to the issue is conflicting.

■ Rather than meet the issue, for the purpose of this opinion, we will assume that the evidence of defendant's statement should not have been admitted into evidence. This does not compel a reversal of Early's conviction, unless the improperly admitted statement "contributed to the conviction." *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. The challenged statement

did not contribute to the issuance of the warrant used to seize the murder weapon. Nor did the statement prejudice the defendant in the mind of the jury. This is so because the sole issue before the jury was the identity of the killer. The palm print taken from the cab in the early investigation stage of the case, coupled with the murder weapon found among Early's personal effects, is overwhelming evidence of his guilt beyond a reasonable doubt. *Schneble v. Florida,* 40 U.S.L.W. 4299 (U.S. March 21, 1972); *Harrington v. California, supra.* Likewise, it is clear beyond a reasonable doubt that the erroneous admission in evidence of Early's statement did not contribute to his conviction.

## III.

■ Contrary to defendant's contention, the court did not err, to the prejudice of the defendant, in permitting the People to try the case as a felony murder when the information charged first-degree murder under the statute. *Bizup v. Tinsley,* 155 Colo. 131, 393 P.2d 556. The court erred in giving the instructions on malice and premeditation, but this prejudiced the People rather than the defendant in that it increased the People's burden beyond that required by the statute.

## IV.

■ Defendant makes three assignments of error premised on the prosecution's challenging for cause those jurors who expressed an inability to apply the death penalty and on the court's refusing to bifurcate the issues of guilt and innocence into separate trials. Regarding the practice of death qualification of jurors, we have stated previously that the practice is proper if — at the time of *voir dire* — it is uncertain whether or not there is direct evidence of guilt. *Hampton v. People,* 171 Colo. 153, 465 P.2d 394; *Atencio v. People,* 147 Colo. 566, 364 P.2d 575. On the question of bifurcated trial, this court has ruled adversely to the defendant's claim on numerous occasions. *People ex rel. McKevitt v. District Court,* 167 Colo. 221, 447 P.2d 205; *Segura v. People,* 163 Colo. 491, 431 P.2d 768; *Jones v. People,* 155 Colo. 148, 393 P.2d 366.

## V.

Defendant is correct in his objection to the court's instruction on the presumption of innocence, however, we have elsewhere held that the rule of *Martinez v. People,* 172 Colo. 82, 470 P.2d 26, which disapproved the traditional instruction, is to be applied prospectively only. *Renfrow v. People,* 176 Colo. 160, 489 P.2d 582.

The defendant's remaining objections appear to us to be either restatements of the objections treated above or so totally without merit as to require no comment by us.

The judgment is affirmed.

MR. JUSTICE ERICKSON concurs in the result.