## No. 24000

## Clarence R. English v.
## The People of the State of Colorado
(497 P.2d 691)

Decided May 30, 1972.

326

Rollie R. Rogers, State Public Defender, Truman E. Coles, Assistant, Robert T. Burns, Deputy, David G. Manter, Deputy, Thomas M. Van Cleave, III, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Clarence English was charged with first-degree murder in the shooting death of Leon Leslie, a/k/a "Giggy." A jury found the defendant guilty of second-degree murder and he was sentenced to the penitentiary. The defendant alleges several grounds of error which he maintains require a reversal of his conviction. We do not find any reversible error and we therefore affirm the judgment of conviction.

The victim met his death on November 25, 1967 at a house in Denver. The prosecution presented three eyewitnesses to the shooting. Their testimony was essentially the same. According to these eyewitnesses, the defendant came to the house sometime around midnight to see his girlfriend. At that time Giggy was asleep in a chair by the front door. The defendant stayed in the room for about ten minutes, then went upstairs to see his girlfriend. He was with her for five to ten minutes. He then came downstairs and left the house. A few minutes later the defendant returned, after "busting" through the front door with a .22 calibre pistol in his hand. He proceeded to fire three shots into the sleeping form of Giggy, who awoke and stumbled toward the kitchen. The defendant then fired three more shots at the victim.

Immediately thereafter, the defendant left the premises. Giggy was pronounced dead on arrival at Denver General Hospital.

The prosecution also presented other evidence as to intent and premeditation to the effect that defendant had previously made known to a third party his intention of "downing" Giggy.

The defendant testified that he acted in self-defense. He related that about a month prior to the shooting, Giggy had stolen his automobile, the trunk of which contained a record player. Defendant's automobile was later recovered at Giggy's residence but the record player was missing. The defendant testified that he made several attempts to reclaim the record player from Giggy, but that his attempts were resisted. On one such occasion, according to the defendant, Giggy called him a lying s.o.b. and said that if the defendant did not leave him alone, he would kill him. Also, on this occasion, Giggy reached toward his back pocket as though to draw a gun, but was restrained by another person. The defendant, as well as three police officers, testified that Giggy had a reputation for violence and physical brutality.

The defendant testified that just prior to the shooting, Giggy was not asleep, and that he was seated on a couch facing the front door of the house. According to the defendant, when he entered the house the second time, Giggy sprang from a sitting position and reached for his back pocket. The defendant testified that because of his knowledge of Giggy's personality and reputation, and his awareness that Giggy usually carried a gun in his back pocket, he drew his own weapon from his coat pocket and defended himself by shooting Giggy. The defendant maintained that he intended only to disable Giggy.

I.

The defendant first alleges that the trial court committed reversible error in refusing to instruct the jury on voluntary manslaughter as requested by the defendant.

The defendant and the People are in agreement as to the test to be applied in determining whether to include

instructions on any of the lesser degrees of homicide. In *Read v. People,* 119 Colo. 506, 205 P.2d 233, we held that the proper test is as follows:

"There is nothing in our criminal practice more thoroughly established or definitely settled than the principle that when there is any evidence, however improbable, unreasonable or slight, which tends to reduce the homicide to the grade of manslaughter, the defendant is entitled to an instruction thereon upon the hypothesis that the same is true, and that it is for the jury, under proper instructions, and not for the trial judge to weigh and consider the evidence and determine therefrom what grade of crime, if 'any, was committed and that the court's refusal to instruct is reversible error."

The above test was recently considered in *Sanchez v. People,* 172 Colo. 168, 470 P.2d 857.

■ Therefore, if in this case there was presented any evidence which would tend to prove the elements of voluntary manslaughter, an instruction thereon should have been given. On the other hand, if there was no evidence presented from which a jury could find the defendant guilty of voluntary manslaughter, the instruction was properly refused. *McKenna v. People,* 124 Colo. 112, 235 P.2d 351; *Berger v. People,* 122 Colo. 367, 224 P.2d 228; *Demato v. People,* 49 Colo. 147, 111 P. 703; *Keady v. People,* 32 Colo. 57, 74 P. 892; *Mow v. People,* 31 Colo. 351, 72 P. 1069; *Smith v. People,* 1 Colo. 121.

Under the facts of this case, the evidence must be analyzed on the basis of the statutory definition of voluntary manslaughter. This analysis must also relate to the self-defense testimony of the defendant. Verbatim quotations from the pertinent statutes are necessary in order to illustrate that in this case, the alleged facts which defendant testified about to show self-defense, did not also tend to prove any of the elements of voluntary manslaughter. Under a variety of other fact situations in a homicide case, the self-defense evidence could conceivably also be a basis for a manslaughter instruction.

C.R.S. 1963, 40-2-4 defines the crime of manslaughter as:

"...the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible or involuntary, in the commission of an unlawful act, or a lawful act without due caution or circumspection."

C.R.S. 1963, 40-2-5 states:

"In cases of voluntary manslaughter there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing."

C.R.S. 1963, 40-2-6 provides with reference to voluntary manslaughter, that:

"The killing must be the result of that sudden violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and punished as murder."

Finally, C.R.S. 1963, 40-2-15 provides:

"If a person kills another in self-defense it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the other was absolutely necessary. And it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

▮▮▮ A consideration of each of the above quoted statutes illustrates the difference between a killing which is done or caused by a provocation (voluntary manslaughter) and one which is done in self-defense. In the former, while there is no strict requirement that the act constituting the provocation occur immediately before the killing, *Ferrin v. People,* 164 Colo. 130, 433 P.2d 108, if there is evidence of a sufficient interval between the provocation and the killing for reason to prevail, the killing is murder and not voluntary

manslaughter. *Shank v. People,* 79 Colo. 576, 247 P. 559; C.R.S. 1963, 40-2-6. In addition, it has been held that the question of whether there has been a sufficient cooling off period is one of law for the court. *Wickham v. People,* 41 Colo. 345, 93 P. 478.

■ On the other hand, to support the defense of self-defense, it must be shown that the provocation or threat occurred immediately prior to the homicide, and must be of such a character as to place the accused in sudden fear of his life or in fear of great bodily injury.

In the case at bar, the evidence, when studied in a light most favorable to the defendant, ·discloses that there might indeed have been acts of provocation· committed against the defendant and that the victim had threatened the defendant. However, these acts occurred at least three weeks prior to the time of the shooting. The evidence fails to show that the defendant immediately prior to the shooting became aroused or incensed, or suffered an irresistible impulse of passion when he encountered Giggy on the night of the shooting. There is no evidence that shows Giggy provoked or threatened the defendant on that occasion. The evidence clearly reflects without dispute that the victim did not utter any words of threat to the defendant or anyone else between the time the defendant first entered the premises and the time of the shooting. The most that can be said is that Giggy possibly sprang from his seat and reached for what the defendant might have reasonably believed was a weapon.

If the jury had believed the testimony of the defendant in this respect, the jury could have found that the defendant acted in self-defense. Having returned a verdict of second-degree murder against the defendant, it is obvious that the jury found that the defendant did not act in self-defense.

■ Our examination of this record reveals no evidence which would support a verdict of voluntary manslaughter. The acts of provocation by the victim and his threats against the defendant all occurred no later than three weeks before the time of the shooting. Therefore, the provisions of C.R.S. 1963, 40-2-6 which describe what does not constitute

voluntary manslaughter are applicable. The evidence here clearly shows that there was an extensive interval between any provocation or threats by the victim and the shooting. As stated in this statute, this interval was sufficient for the voice of reason and humanity to be heard and this being so, the killing must be attributed to deliberate revenge and must be punished as murder.

## II.

■ As a second assignment of error, the defendant claims that the trial court erred in allowing the prosecution to qualify the jury for imposition of the death penalty. This argument is adequately answered in our recent decision in *Padilla v. People,* 171 Colo. 521, 470 P.2d 846. In that case, we stated:

". . .it has long been recognized in Colorado that a prospective juror must be willing to consider the alternative punishments which it alone may impose in connection with first-degree murder. The right of the prosecution to qualify the jury has consistently been upheld by the cases cited."

The test set forth is whether regardless of his personal beliefs or convictions, a venireman could impose the death penalty. If he cannot set aside those convictions and impose sentence in accord with his oath as a juror, it is not error to exclude him, not because of his beliefs and convictions, but because of his inability to perform his oath as a juror. *See Carroll v. People,* 177 Colo. 288, 494 P.2d 80; *Hampton v. People,* 171 Colo. 153, 465 P.2d 394. In the case at bar, only those veniremen who stated that they could not impose the death penalty under any circumstances were excluded. The defendant's claim of error is without merit.

## III.

■ Defendant next asserts that it was error to deny him a bifurcated trial. The same contention advanced by the same defendant was considered and rejected by this court in *People ex rel. McKevitt v. District Court,* 167 Colo. 221, 447 P.2d 205. That decision is dispositive here. *See* also *Jorgensen v. People,* 178 Colo. 8, 495 P.2d 1130.

## IV.

 The defendant's final contention is that it was error for the trial court to give the jury two instructions and refuse to give two tendered by the .defendant. The first of the instructions objected to is that containing the "presumption of innocence being a humane provision of the law" language, which was disapproved by this court in *Martinez v. People,* 172 Colo. 82, 470 P.2d 26. In *Renfrow v. People,* 176 Colo. 160, 489 P.2d 582, we held that the giving of this instruction in cases tried before the date of *Martinez* was not reversible error. This case was tried before the announcement of the *Martinez* opinion.

 The other instruction objected to by defendant read in part:

"However, if you should find the defendant did not act in self-defense, you may not consider for any purpose the evidence relating to the character of the deceased."

The defendant tendered an instruction which stated that the jury should consider the reputation evidence concerning the victim as corroborative of defendant's evidence which attempted to justify the killing by the defendant.

The instruction given by the court correctly stated the law. Inasmuch as the defendant was not entitled to an instruction on voluntary manslaughter, the only other aspect of the case upon which the victim's reputation was germane was that of self-defense. If the defendant was not acting in self-defense, the reputation of the victim became irrelevant and immaterial.

Judgment affirmed.