## No. 26589

## The People of the State of Colorado v. Frank Randall Holmes

(553 P.2d 786)

Decided August 30, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Ed-

ward G. Donovan, Solicitor General, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Dorian E. Welch, Deputy, Forrest W. Lewis, Deputy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE HODGES.

Defendant Holmes was charged with robbery and conspiracy. He was found guilty by a jury of both charges. On this appeal, he asserts four allegations of trial court error requiring reversal of his conviction. The defendant's contentions are without merit and therefore we affirm the judgment of the trial court.

The victim of the robbery testified that he was in the business of selling snow cones from a three-wheeled vehicle which he drove along the streets of Pueblo. He was robbed by three young men of approximately thirteen dollars. The defendant, age 22, was implicated by the testimony of one of the robbers, Kim Haddenham, age 18, who had previously entered a plea of guilty in connection with this robbery. He testified that on the evening of the robbery, he was riding around in a car with the defendant and two other young men. They wanted money for a party and someone in the group suggested robbing the snow cone merchant. During direct examination by the district attorney, this witness stated that the defendant said "right on" to the idea of the robbery and indicated that he would remain in the car. He also testified that the defendant did stay in the car during the robbery, and that he took possession of the money after the robbery and purchased two cases of beer with it at a liquor store.

The defendant did not testify in his own behalf. The other two young men, both age seventeen, who participated in the robbery, were called as defense witnesses. They confirmed that defendant was with them and Kim Haddenham in a car just prior to the robbery and after the robbery. They testified, however, that the defendant was against the robbery. One of the witnesses testified that while the group was discussing the planned robbery, the defendant said "it was kind of a stupid job to do and it was too small, not worth it, and he said he didn't want to get involved . . ."

## I.

■ The defendant maintains that the trial court erred when it sustained an objection by the district attorney to defense counsel's question eliciting information from one of the defense witnesses as to Kim Haddenham's general reputation in the community for truth and veracity. The defendant argues that the refusal of the trial court to allow such evidence to impeach the prosecution's chief witness is reversible error.

The record reveals that the district attorney's objection was on the ground that a proper foundation for the inquiry had not been laid. When the objection was sustained by the trial court, defense counsel then proceeded to ask the defense witness further questions in an apparent effort to formulate a proper foundation. Inexplicably, he terminated the questioning of this defense witness without ever again putting the critical question to him. Thus, there is no issue on whether a proper foundation was subsequently established.

Generally, whether a sufficient foundation has been established is a question for the exercise of the trial court's discretion and its ruling thereon will not be upset unless a clear abuse of discretion is shown. We find no such abuse of discretion here. *See McCormick on Evidence* (2d Edition) section 44.

## II.

The defendant maintains that the trial court committed reversible error when it refused to submit to the jury two instructions tendered by the defendant.

In essence, these tendered instructions emphasized that mere presence at the scene of a crime is not sufficient to make a person an accessory; and that mere passive cognizance of a crime is not sufficient to infer an actual agreement between two or more persons to commit a crime.

■ It is the defendant's contention that these tendered instructions comprised his theory of defense, and as such, he was entitled to them. There is no question according to well established law in Colorado that a defendant is entitled to an instruction on his theory of defense. *See Johnson v. People*, 145 Colo. 314, 358 P.2d 873 (1961). However, Colorado has also recognized, in a long line of cases, the corollary proposition that it is not error to refuse to give a defense theory instruction when the contents of that instruction is embodied in other instructions given by the court. *See Bennett v. People*, 168 Colo. 360, 451 P.2d 443 (1969).

We have examined the instructions given to the jury in this case and find that defendant's theory of defense is adequately encompassed within the instructions given to the jury.

## III.

The defendant next asserts that the trial court erred in denying his motion to dismiss based upon failure of the district attorney to timely comply with a discovery order to provide defense counsel with any

480

statements of witnesses to be called at trial.

The record shows that several months prior to the date set for trial, the trial court ordered the district attorney to furnish the defendant, not later than ten days before trial, with copies of any statements made by witnesses to be called at trial. About a week prior to trial, defense counsel met with two of the robbers, who were juveniles, and were endorsed as witnesses. They told defense counsel that in the presence of their parents, they had given oral statements to the police who had taken notes. Since the defendant had not been furnished a copy of these notes, defense counsel filed this motion to dismiss.

On the trial date and prior to the commencement of trial, an *in camera* hearing was held on the motion to dismiss. The testimony revealed that these two juvenile robbers had been interviewed by police officers of the juvenile division and that notes were taken. From these notes, it appeared that the statements were both inculpatory (defendant had waited in the car while "we" did the robbery) and exculpatory (that defendant suggested that "we" do not do it) in regard to the defendant's involvement in the robbery.

The district attorney testified that these two juvenile robbers were being processed by juvenile authorities and that he had never seen the notes made with regard to these oral statements, nor had the fact of such statements been made known to him. The district attorney admitted that he should have spoken to police officers as to whether any statements had been taken but explained that he did not do so because of the nature of the case involving these juveniles.

The trial court denied the motion to dismiss and ordered that the copies of the notes be immediately furnished to defense counsel.

It is now a well established principle in our law that evidence which is suppressed by police or the prosecution results in a denial of due process. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); and *People v. Walker*, 180 Colo. 184, 504 P.2d 1098 (1972). *See also United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Although there was not timely compliance with the trial court's discovery order in this case, there is no denial of due process here which would permit a reversal of this conviction. There is no contention here, nor does the record reveal that there was any wilful effort made by either the district attorney or the police to suppress any evidence which might be helpful to the defense. *See People v. Walker, supra.*

We agree with the trial court's finding in this matter that the defendant was not "in any manner jeopardized or being deprived in any way of due process." He received the relatively brief notes of the oral statements made by the juvenile robbers just prior to trial. In any event, we comment

that had the defendant here felt that the notes on these statements required further study and preparation for trial, he should have requested a continuance. He saw fit not to do this under the circumstances here.

## IV.

■ Lastly, the defendant maintains that the trial court erred in refusing to poll the jury in order to determine whether any jurors.had read a newspaper article concerning the trial which had been published during the jury's overnight absence from the court.

It is noted from the record that when the court adjourned for the night, the trial court admonished the jury not to discuss trial matters while away from the court and further, to ignore newspaper articles concerning the trial, and to refrain from listening to newscasts on radio and T.V.

The record further reveals that the trial court in denying the motion commented that the newspaper article in question was not necessarily prejudicial to the defendant and that it could be interpreted as being favorable to the defendant. It was merely a short summary of the proceedings and trial during the previous days.

In any event, and particularly under the circumstances here, we adhere to the rule of law in this state as expressed in *Hammons v. People*, 153 Colo. 193, 385 P.2d 592 (1963). In that case, we held that absent a showing to the contrary, it is presumed that the jurors followed the trial court's instructions. Here, there was no showing by the defendant that any of the jurors may have read the newspaper article. It appears that the defendant's motion to poll the jury was based merely upon unsupported speculation that some member of the jury might have read the newspaper article and might have been prejudiced thereby. The trial court did not commit error in denying this defense motion.

Judgment affirmed.

MR. JUSTICE KELLEY, MR. JUSTICE GROVES and MR. JUSTICE ERICKSON concur.