The PEOPLE of the State of Colorado
Plaintiff-Appellant,

v.

Robert Jay RAFFAELLI,
Defendant-Appellee.

No. 81SA560.

Supreme Court of Colorado,
En Banc.

June 28, 1982.

Terrance Farina, Dist. Atty., James R. Alvillar, Chief Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.

J. Gregory Walta, Colorado State Public Defender, Harvey M. Palefsky, Deputy State Public Defender, Grand Junction, for defendant-appellee.

LOHR, Justice.

The prosecution brings this interlocutory appeal from a ruling of the Mesa County District Court suppressing from use as evidence certain statements made by the defendant, Robert J. Raffaelli, to Grand Junction police officers. The defendant is charged with child abuse, section 18–6–401, C.R.S.1973 (1981 Supp.), in connection with the death of his infant daughter, Natasha; the suppressed statements relate to the cause of the child's death. The trial court's ruling is based on its conclusions that the statements were involuntary and were obtained in violation of the defendant's *Miranda* right to terminate questioning.[1] We affirm.

I.

On June 1, 1978, two-month-old Natasha Raffaelli was brought to St. Mary's Hospital in Grand Junction in serious condition. She died at the hospital on June 7. Her parents advised the social workers who inquired about the circumstances of the death that Natasha had been injured while riding with them in their pickup truck when an empty infant seat struck the baby on the head. The case was brought to the attention of the Grand Junction Police Department because the nature of the child's injuries raised a suspicion that her death may have been caused by child abuse.

On June 10, 1978, police officer Stiles went to the home of the defendant and his wife and asked them to go to the police department offices for questioning relating to their daughter's death. The defendant at first objected to doing so but shortly thereafter complied. The Raffaellis traveled to the police station in their own car. Upon arrival at the station Stiles took the defendant's wife to an interview room, leaving the defendant at Stiles' desk in a nearby room. Lt. Kibler, who had assigned the case to Stiles for investigation, was the only police officer in the area, and the suppressed statements were made during his ensuing talk with the defendant. The facts concerning Kibler's conversation with the defendant were developed through prosecution witness Kibler, the defendant, and defense psychiatric witness Dr. Miller.

Lt. Kibler testified as follows. After Stiles departed, Kibler thought it necessary to keep an eye on the defendant because policemen's desks in the area might contain files or weapons. In order to be less conspicuous about his surveillance, Kibler struck up a conversation with the defendant. This led to questions by the defendant about the investigation, followed by his request to talk to Kibler about the case. The lieutenant said he was willing to listen.

The defendant then related that the child had been hit in the head by the infant seat, which flew through the air when the defendant caused his pickup truck to turn to the right at an intersection after it had first swerved left to miss a rock and had hit a dip.[2] Kibler responded that the defendant's description of the occurrence "was against the ways centrifugal force operates because a baby seat would have gone to the left instead of the right if he had turned the corner as he described it." Kibler then said he was suspicious of the defendant's story, and advised him of his *Miranda* rights.

The defendant expressed his willingness to continue to talk about the incident without an attorney present. Kibler then became more accusatory, questioned him closely about the details of the accident

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** The defendant later elaborated that the child was being held by her mother, who was seated in the passenger seat of the pickup, when the accident occurred. According to the defendant, the infant seat was in an upright position on the seat of the vehicle, between the two adults.

story, and told him again that he did not believe the defendant because his story was not consistent with the operation of centrifugal force. Kibler said, "I will tear your story up in court." The defendant replied, "[t]hat is my story; that's it; that is all I'm going to say," and, in response to questions about his meaning, explained that he meant only that the story was true and so he would not change it.[3]

Kibler then "changed the focus of the interview" to inquire about the baby's background, but soon directed the conversation to the defendant's conduct towards the child, asking if he had ever struck or shaken the child. When the defendant denied such conduct, Kibler said, "I basically told him at that point that I didn't believe him and I felt I could convict him because he was not telling me the truth; he was lying to me." After this, Kibler took the defendant into his office and "told Mr. Raffaelli basically that I wanted the truth about the situation and not a lie." The defendant then said, "I did it. I shook the child. I did kill her. I didn't mean to,"[4] and broke down and started sobbing. Prompted by Kibler's further questions, the defendant gave a detailed account of the events leading to the baby's injuries. He related to Kibler that the shaking incident followed an extensive period in which the baby would not stop fussing and crying. The defendant went over the story again in Stiles' presence and demonstrated how he shook the child. The interview began at 2:00 p. m. and ended before 5:00 p. m. that same day.

Kibler described the tone of his own voice as conversational throughout the interview. He said the defendant also spoke in conversational tones and that neither raised his voice. After the confession Kibler consulted the district attorney by telephone and then placed the defendant under arrest.

The defendant testified briefly on direct examination by his counsel. He said that Kibler's demeanor during the interview caused him to feel trapped—not free to leave—during the conversation. The defendant went on to state that he felt threatened and intimidated when Kibler began to express disbelief in the infant seat accident story. The tone or pitch of the lieutenant's voice changed about the time he gave the *Miranda* advisement so "that you could tell he was upset with you. He didn't believe anything I was saying." The defendant acknowledged that he understood Kibler's *Miranda* advisement and agreed to give up his rights and speak to the lieutenant.

Dr. Thomas Edward Miller, a psychiatrist, testified for the defendant. Based on his examination of the defendant he expressed the opinion that, at the time of the questioning by Kibler, the defendant was depressed, primarily because of feelings of grief over the death of his child, and that he was frightened and felt pushed to give some sort of response. Miller testified that as a result of the defendant's "feelings of depression, guilt, and feelings of wanting to withdraw" at the time of the questioning he was more tractable, *i.e.*, "[t]hat he would be more likely to say things, be more easily influenced to say those things, than he otherwise might say."

The trial court concluded that the prosecution had failed to establish that the defendant's confession was voluntary, and so suppressed those statements made by the defendant after the *Miranda* warning was given. In response to specific inquiries by defense counsel, the court also found that the defendant's statement that his story was all he had to say was a reliance on his *Miranda* rights and that questioning should have stopped then. Implicitly, therefore,

---

**3.** Kibler testified that after the defendant made his statement indicating that he had nothing further to say Kibler asked what he meant and whether he wanted an attorney and whether he was going to quit talking. These inquiries were not reflected in Kibler's three-page written police report of the interview. The defendant testified that these inquiries did not occur, or at least that he could not remember them. The trial court did not credit Kibler's testimony on this point.

**4.** Stiles accompanied Kibler and the defendant into Kibler's office but left at the defendant's request before the initial confession.

the trial court ruled that suppression of the statements also was required as a result of a *Miranda* violation.

The People challenge the sufficiency of the evidence to support the finding that the suppressed statements were not voluntary and contest the appropriateness of the legal conclusion that the defendant's *Miranda* rights were violated. The prosecution also asserts that the trial court improperly limited the scope of cross-examination of the defendant at the hearing on the motion to suppress. We consider the latter issue first.

## II.

The prosecution asserts that the trial court erred in limiting the scope of cross-examination of the defendant. We disagree.

The direct examination of the defendant was very limited. Defense counsel's questioning was directed to developing whether the defendant felt that he was free to leave during the course of his interrogation by Kibler.[5] Defense counsel inquired about Kibler's demeanor, questions, and tone of voice. The defendant testified that during the interview he felt "trapped," that he knew he was not free to go and that he felt "threatened and intimidated." Defense counsel later stated that his purpose in this

examination was to adduce evidence that the defendant was in custody during Kibler's questioning and argued that cross-examination should be limited to facts directed to this issue.

■ On cross-examination the district attorney took the position that the direct examination had opened up the question of voluntariness, and the trial court agreed.[6] Accordingly, the trial judge permitted the prosecution to question the defendant about his education, his ability to understand the *Miranda* advisement and the questions being asked in court, his waiver of the *Miranda* rights, his grasp of the concept of centrifugal force, and Kibler's conduct while interrogating the defendant at the police station. The court, however, sustained objections to questions by which the prosecution sought to elicit the content of the confession made by the defendant to Lt. Kibler.[7] The People challenge the rulings preventing this evidence from being presented. We conclude that the trial court acted within its discretion in not permitting this testimony.

CRE 611(b) prescribes the permissible scope of cross-examination:

Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the

5. The motion to suppress evidence was founded on additional bases not before us on this appeal. The defendant contended that he was arrested without probable cause and that the statements were fruits of such illegal arrest. He urged as well that his purported waiver of *Miranda* rights was ineffective, so that the statements should be suppressed for that additional reason. Much of the testimony at the suppression hearing was directed to the factual basis for these two additional challenges. In ruling on the motion to suppress, the trial court did not address these alternative grounds for the relief sought.

6. Responding to defense counsel's argument that voluntariness was not raised by the direct examination, the court said: "I think you are confusing me, Mr. Palefsky, when you say voluntariness. You asked [the defendant] whether he felt trapped; you asked him whether he felt threatened. Those are all questions of voluntariness. I think [the prosecutor] can go into those, but where I draw the line is when he asks [the defendant] to go beyond that and talk about his theories about what happened." Fur-

ther, in addressing the deputy district attorney's argument that he was being limited in eliciting the circumstances surrounding the statement the court said "Just a minute. I want the record clear that I am not stopping you from asking questions about whether he was badgered by this person, whether he felt trapped, whether anything like that [happened]. Where I draw the line is when you start to ask him about his explanations of the theory of how the offense took place or didn't take place."

7. Cross-examination of a defendant concerning particular matters not raised by direct examination, such as the content of the defendant's confession, may implicate the defendant's privilege against self incrimination. However, that privilege was not claimed here, and, therefore, we do not consider the issue in this case. *See generally*, 3 J. Weinstein & M. Berger, *Weinstein's Evidence* 611.[03] (1981); Carlson, *Cross-Examination of the Accused*, 52 Cornell L.Q. 705 (1967).

exercise of discretion, permit inquiry into additional matters as if on direct examination.

 The prosecution argued that the excluded evidence was within the scope of an appropriate inquiry into voluntariness because "if a person can present, give, a cogent explanation as to what happened that in itself can be an indicia (sic) or evidence of voluntariness. It doesn't establish voluntariness per se, but it goes to that issue." The content of the defendant's statement was already before the court through the testimony of Lt. Kibler. No issue was made as to the accuracy of Kibler's account of that statement, and the prosecution's offer of proof as to the excluded evidence was essentially a summary of the defendant's confession as Kibler had related it. We have long held that the scope and limits of cross-examination are within the sound discretion of the trial court and absent an abuse of that discretion the rulings of the court will not be disturbed on review. *People v. Crawford*, 191 Colo. 504, 553 P.2d 827 (1976). *Accord, People v. Moreno*, 192 Colo. 314, 558 P.2d 440 (1976); *People v. Cushon*, 189 Colo. 230, 539 P.2d 1246 (1975). Unless the restriction of cross-examination is so severe as to constitute denial of that right, the extent to which the cross-examination should be allowed rests within the trial court's discretion. *Carsell v. Edwards*, 165 Colo. 335, 439 P.2d 33 (1968). Under the circumstances here we conclude that the trial court's limitation of the cross-examination of the defendant did not prejudice the prosecution and was not an abuse of discretion.[8]

We next consider whether the trial court erred in concluding that the defendant's confession was not voluntary.

### III.

 A defendant's confession is admissible in evidence only if it is voluntary. *Jack-son v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *People v. Quintana*, 198 Colo. 461, 601 P.2d 350 (1979); *People v. Scott*, 198 Colo. 371, 600 P.2d 68 (1979); *People v. Parada*, 188 Colo. 230, 533 P.2d 1121 (1975). This rule has its source in the due process clause of the United States Constitution. *Jackson v. Denno, supra; Jordan v. People*, 161 Colo. 54, 419 P.2d 656 (1966), *cert. denied*, 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 (1967). Our state constitution requires no less. *Colo.Const.* Art. II, § 25.

In addressing the limits of constitutionally permissible interrogation, the United States Supreme Court has said:

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond*, 365 U.S. 534 [81 S.Ct. 735, 5 L.Ed.2d 760]. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession.

*Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057–58 (1961). *See also, Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962) ("If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced." 372 U.S. at 307, 83 S.Ct. at 754, 9 L.Ed.2d at 782.).

---

**8.** The prosecution also argues that limitation of its cross-examination of the defendant frustrated its attempt to bolster the credibility of Kibler and to substantiate his account of Raffaelli's confession. However, as noted above, the prosecution's offer of proof in connection with the testimony it intended to elicit from the defendant concerned only the uncontroverted portions of Kibler's account of the confession. Contrary to the prosecution's assertion, confirmation of Kibler's uncontested testimony was not crucial to enhancing the credibility of those portions of Kibler's testimony that were contested.

In *People v. Pineda*, 182 Colo. 385, 513 P.2d 452 (1973), we relied on an even more succinct standard for determination of voluntariness. Citing and quoting in part from *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 759 (1970), we stated:

> To be admissible, a confession must be free and voluntary. It '. . . must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight. . .' (emphasis omitted).

182 Colo. at 387, 513 P.2d at 453.

In *People v. Parada*, 188 Colo. at 234, 55 P.2d at 1123 (1975), we expanded this formulation by extending the quotation from *Brady* to add "nor by the exertion of any improper influence." 188 Colo. at 234, 533 P.2d at 1121. *Accord, People v. Quintana, supra; People v. Scott, supra.* All these cases involved express or implied promises or inducements to confess. In our two most recent cases involving impaired mental condition as the source of asserted involuntariness, we have referred, without elaboration, to the requirement that a statement be voluntary, *People v. Fordyce*, Colo., 612 P.2d 1131 (1980) or free and voluntary, *People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978).

Involuntary statements are excluded from evidence "not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth." *Rogers v. Richmond*, 365 U.S. 534, 541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760, 766 (1961).[9]

Whether a statement is voluntary must be evaluated on the basis of the totality of the circumstances under which it is given. *Culombe v. Connecticut, supra; Fikes v. Alabama*, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); *People v. Quintana, supra; People v. Scott, supra; Duncan v. People*, 178 Colo. 314, 497 P.2d 1029 (1972); cf. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (voluntariness of consent to search); *Brady v. United States, supra* (voluntariness of plea of guilty). Relevant circumstances include the occurrences and events surrounding the confession and the mental condition of the person making the statement. *Culombe v. Connecticut, supra; People v. Parks, supra; People v. Rodriguez*, Colo.App., 645 P.2d 857 (1982); see *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). Because the mental condition of the defendant is relevant to the voluntariness of his statements, we have permitted psychiatric testimony to be adduced as evidence of the defendant's mental condition at the time of his statement. *People v. Parks, supra; accord, People v. Fordyce, supra.*

The fact that *Miranda* warnings precede a challenged confession does not insulate that confession from an inquiry into whether it was voluntarily given. *People v. Quintana, supra; People v. Scott, supra; People v. Parks, supra.* Therefore, even though the evidence reflects that the defendant expressly agreed to continued questioning after his *Miranda* advisement, it remains necessary to determine whether those statements were voluntarily made. *Id.*

The People must establish voluntariness of a confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972);

9. This is not to suggest, however, that the truthfulness of statements obtained involuntarily is not suspect. While the possible inaccuracy of such statements is not necessary to exclusion of those statements from evidence, the suspect character of those statements is an additional and possibly independent basis for suppression. See generally *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *C. Whitebread, Criminal Procedure* § 15.01 (1980).

*People v. Fordyce, supra* (1980); *People v. Martinez*, 185 Colo. 187, 523 P.2d 120 (1974).

 The trial court explicitly applied the totality of the circumstances test to Raffaelli's confession. In finding that the confession was not voluntary, it relied in part upon the length of the interrogation and the repetitive questioning by Kibler which "creat[ed] a stressful situation with the defendant." It further found that Raffaelli was under substantial emotional stress and distraught, as corroborated by the fact that he broke down and cried following his confession. The court also pointed to the defendant's irrational reaction when placed under arrest shortly after his confession, and the accusatorial nature of the interrogation. From these findings, and giving emphasis to Dr. Miller's testimony about the susceptibility of the defendant to making a statement because of his emotional state, the trial court concluded that the statements made by the defendant subsequent to the time that he received his *Miranda* advisement from Kibler were involuntary and so must be suppressed from use as evidence.

A trial court's finding of fact on the voluntariness of a confession will be upheld by this court on review where, as here, it is supported by adequate evidence in the record. *E.g., People v. Quintana, supra; People v. Scott, supra; People v. Parks, supra; People v. Pineda, supra.* Accordingly, we reject the prosecution's challenge to the trial court's conclusion that the suppressed statements were not voluntarily given.

### IV.

Our conclusion that the trial court's resolution of the question of voluntariness is supported by the record makes it unnecessary to consider whether its holding that the defendant's right to terminate questioning was not scrupulously observed. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We intimate no view on this question.

We affirm the ruling of the trial court.

ROVIRA, J., dissents from part III of the opinion and would reverse the trial court's ruling.

