The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Paul Ivan LOSCUTOFF,
Defendant-Appellant.

No. 81SA22.

Supreme Court of Colorado,
En Banc.

March 28, 1983.

Rehearing Denied April 18, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary E. Ricketson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendant-appellant.

HODGES, Chief Justice.

The defendant Loscutoff was found guilty by a jury of second-degree murder.[1] On appeal, he urges reversal on the basis of seven claims of error. We affirm.

The defendant shared a house in Durango, Colorado, with three women, including the victim and her son. One of these women testified at trial that three or four weeks before the homicide she overheard the victim tell defendant she wanted him to move out of the house because he was endangering the continued custody of her son. The defendant responded with threats to the victim.

On the day before the homicide the defendant repeatedly threatened the victim by stating, "keep her out of my way. I am going to beat her face in." The defendant was to move out of the house that evening. While packing, the defendant made statements indicating he was enraged because he did not know where the victim was and expressed the belief she might be with another man.

The victim returned home several hours after midnight. She appeared to be inebriated and slightly smudged from a motorcycle accident. One of her roommates checked the victim, but found no serious injuries, however there were a few scratches on her forehead.

The driver of the motorcycle testified that he and the victim had been involved in an accident which caused the motorcycle to fall over, but the victim had jumped off before it fell, got up immediately, helped him stand the motorcycle back up, and told him she was fine.

1. Section 18–3–103, C.R.S.1973 (1978 Repl.Vol. 8).

After arriving, the victim talked to her roommates for a few minutes, took a shower, and then looked in on her sleeping son. The defendant returned, finding her standing in the bedroom doorway. He shoved her inside the room, followed her in, and slammed the door behind them. One witness in the house testified that the defendant yelled and cursed the victim. Loud thumping and moaning of the victim were heard. Such testimony was corroborated by one of the other women. After the defendant left the room, one witness investigated. The whole side of the victim's face was bleeding and she was not moving. The testimony was that the defendant told the victim, "It's the last time, you bitch, it's the last time."

Police and an ambulance soon arrived. One officer testified the victim was unconscious and breathing with great difficulty when he arrived. The victim was rushed to a hospital where necessary surgery was performed. She died two days later.

An autopsy was conducted by a pathologist, who testified that it was related to him that the victim had been in a motorcycle accident prior to the beating; however, he stated that the motorcycle injuries did not contribute to the death and that death was caused by episodic beating, and subdural compression of the brain. Testimony of other doctors involved in the autopsy supported this conclusion.

### I.

■ The defendant first challenges the trial court's denial of his motion to dismiss on the ground that the second-degree murder statute is unconstitutional because it violates due process rights by rendering irrelevant evidence concerning an impaired mental condition due to voluntary intoxication. *See* section 18–3–103(2), C.R.S.1973 (1978 Repl.Vol. 8).

We have repeatedly rejected this argument. Voluntary intoxication is not exculpatory regarding the general intent crime of second-degree murder. *See, e.g., People v. Campisi,* 649 P.2d 1053 (Colo.1982); *People v. DelGuidice,* 199 Colo. 41, 606 P.2d 840 (1980).

### II.

The defendant next contends his right to a fair trial was violated by the court's denial of his motion for change of venue.

■ It is fundamental to a defendant's constitutional right to a fair trial that he be provided with an impartial jury. *See, e.g., People v. Gurule,* 628 P.2d 99 (Colo.1981); section 16–10–103(1)(j), C.R.S.1973 (1978 Repl.Vol. 8). However, a showing of complete ignorance of the facts by potential jurors is not required and is seldom possible in this day and age. When a trial court has denied a motion for change of venue due to pretrial publicity, that denial will stand absent a showing that either the publicity had an actual adverse effect on a member of the jury or that "massive, pervasive and prejudicial publicity" existed to the point that it can be presumed that there was prejudicial effect on the jury. *See generally, Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *People v. Botham,* 629 P.2d 589 (Colo.1981) (and cases cited therein); *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976); *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983).

■ In the present case, there was no showing that the publicity had an actual adverse effect upon the jury panel. The record reveals that those jurors who had heard of this case testified under oath that they could base their verdict solely on the evidence presented at trial. Mere familiarity with a case due to publicity does not, in itself, create a constitutionally defective jury.

Moreover, there is no basis for a finding that massive, pervasive, and prejudicial publicity existed. The pretrial publicity consisted of approximately four newspaper articles and several radio broadcasts, spanning the sixteen months between the time of the homicide and the defendant's trial. Such limited publicity is distinguishable

from the volume and intensity of pretrial publicity present in *People v. Botham, supra,* and *Walker v. People,* 169 Colo. 467, 458 P.2d 238 (1969). Additionally, there was a significant time lag between the bulk of the publicity and the trial date. Since juror prejudice neither was shown nor can be presumed, it was not error to deny defendant's motion for a change in venue.

### III.

■ The defendant contends the trial court committed error in admitting a photograph of the victim and her young son, taken several months before the incident. The argument is that such a photograph is by its nature inflammatory.

■ Generally, a photograph may be admitted when its subject matter may be introduced into evidence in words. *See, e.g., People v. Roark,* 643 P.2d 756 (Colo. 1982). The trial court must weigh the probative value against the potentially inflammatory effect, and may admit a photograph if the former outweighs the latter. *See, e.g., People v. White,* 199 Colo. 82, 606 P.2d 847 (1980). The trial court's determination will go undisturbed absent an abuse of discretion. Here the photograph was introduced for the purpose of identification. In admitting it, the trial court obviously believed that its probative value outweighed any prejudicial effect it might have had on the jury. The trial court did not abuse its discretion in this regard.

### IV.

■ The defendant's fourth alleged error is that the trial court improperly limited inquiry into the bias and motive of two prosecution witnesses. The right to confront and cross-examine witnesses is guaranteed. *U.S. Const.* amend. VI; *Colo. Const.* Art. II, Sec. 16. The right is tempered, however, by the trial court's authority to prohibit cross-examination on matters wholly irrelevant and immaterial to issues at trial. *See People v. Raffaelli,* 647 P.2d 230 (Colo.1982); *People v. Crawford,* 191 Colo. 504, 553 P.2d 827 (1976). "Unless the restriction of cross-examination is so severe as to constitute denial of that right, the extent to which the cross-examination should be allowed rests within the trial court's discretion." *People v. Raffaelli,* 647 P.2d at 234.

■ Regarding one witness, it is alleged by the defendant that the trial court erred when it disallowed inquiry into whether the witness had been informed of the potential penalty for dispensing an illegal drug.

During an *in camera* hearing, the prosecution stated there had been no bargain struck in his decision not to prosecute this witness for presumably giving a controlled substance to the victim and several others on the evening of the homicide, and that he never intended to prosecute this witness, since he believed there was insufficient evidence to convict. The trial court permitted open court inquiry regarding the district attorney's decision not to prosecute, but prohibited inquiry into potential penalties as being irrelevant.

Such does not constitute an abuse of discretion, given that the court permitted inquiry into the decision not to prosecute. Moreover, testimony *in camera* also indicated possible penalties were never discussed.

■ Regarding another witness, defense counsel sought to establish this witness' possible bias by inquiring about an instance where defendant rejected an offer of sex from this witness. After a hearing *in camera* the trial court prohibited further inquiry into this matter. The court found it irrelevant since the witness' hostility toward the defendant had already been made evident. It also considered such inquiry to violate standard principles of evidence by needlessly impugning moral character. We find no abuse of discretion by the trial court. *See* C.R.E. 402, 403; *People v. Couch,* 179 Colo. 324, 500 P.2d 967 (1972); *Ager v. Adams,* 155 Colo. 544, 395 P.2d 735 (1964).

### V.

■ The defendant claims error occurred when the trial court permitted the

late endorsement of another witness and did not allow a continuance at defendant's request. The trial court granted the late endorsement request and denied the defendant's motion for a continuance, finding that the defendant was previously aware of this person's potentiality as a witness and because this witness was present at a pretrial interview of prosecution witnesses conducted by the defense. The court, however, provided the defense a second opportunity to interview this witness before allowing her to be called as a witness.

In *People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978), we recognized that granting leave for the late endorsement of witnesses is within the sound discretion of the trial court, and will not be overruled absent a showing of prejudice due to surprise or an inadequate opportunity to interview the witness prior to trial. No such prejudice was shown in this case.

## VI.

The defendant's contention that the evidence was insufficient to support the guilty verdict is also rejected.

When the sufficiency of the evidence is challenged by the defense on appeal, an appellate court reviews the evidence in the light most favorable to the prosecution and will determine from the evidence whether the jury could reasonably conclude therefrom that each material element of the offense and the defendant's guilt had been proven beyond a reasonable doubt. *See, e.g., People v. Marques,* 184 Colo. 262, 520 P.2d 113 (1974).

Our review of this record reveals that the jury was adequately instructed as to each of the elements of the alleged crime, and the evidence is wholly supportive of guilt beyond a reasonable doubt.

## VII.

Lastly, it is claimed prejudicial error resulted from two independent prosecutorial statements in closing argument. In one, the prosecutor stated his experience had shown him the issues of the present case not to be "vast." Defense objection was sustained, but there was no instruction to the jury to disregard this statement.

Generally, any statement of personal belief by counsel is improper. *See generally* I *ABA, Standards Relating to the Prosecution Function* 3–5.8(b) (2d ed. 1980). The situation is most egregious when the ultimate guilt of the defendant is averred. That was not the situation here. Although it is more professional for the prosecution to refrain from such commentary, in this case we find no basis for reversible error. *See Cokley v. People,* 168 Colo. 52, 449 P.2d 824 (1969).

Error is also claimed with regard to a rebuttal argument by the prosecution. In closing argument, the defense had remarked that two other people present in the house did not testify and asked the jury to ponder why. Such was improper, as it had a tendency to mislead the jury as to inferences it should draw, and also may have tended to have been calculated to be inflammatory. *See* I *ABA, Standards Relating to the Defense Function,* 4–7.8(a)(c) (2d ed. 1980).

The prosecution responded by stating that perhaps these individuals did not appear in court because of a fear of the defendant. This comment was similarly inappropriate. I *ABA, Standards Relating to the Prosecution Function* 3–5.8(a), 3–5.9 (2d ed. 1980). However, especially in context, it is clear the prosecution was responding to an argument raised by defense counsel. *See People v. Pleasant,* 182 Colo. 144, 511 P.2d 488 (1973); *People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973); *see also People v. Lundy,* 188 Colo. 194, 533 P.2d 920 (1975).

The trial court overruled a defense objection. As this court has often held, "the trial court, being on the scene, is in a better position than we to evaluate the situation and to assess the effect. . . ." *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968). We hold that this comment did not constitute reversible error.

The judgment is affirmed.