**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

**v.**

**Joseph ORTEGA, Defendant-Appellant.**

**No. 81CA0572.**

Colorado Court of Appeals,
Div. III.

Aug. 18, 1983.

Rehearing Denied Sept. 15, 1983.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Cecil L. Turner, Pueblo, for defendant-appellant.

VAN CISE, Judge.

Defendant, Joseph Steven Ortega, was found guilty by a jury of sexual assault on a four-year-old boy in violation of § 18–3–405, C.R.S.1973 (1978 Repl.Vol. 8). Ortega appeals his conviction. We affirm.

## I.

The child victim was not called as a witness at the trial. Instead, over the hearsay objections of defense counsel, the court allowed the mother, a physician, and a police officer to testify to statements made to each by the child, on the basis that these statements came within the *res gestae* or excited utterance exception to the hearsay rule. CRE 803(2). The mother testified that Ortega was the baby sitter for the four-year-old victim and his three-year-old brother. He picked up the children at their home at 5:00 p.m. on February 15, 1980, and returned them at 6:00 a.m. the following morning. When he returned the children, he told the mother that the victim had been constipated and was not feeling well.

She then testified that after Ortega left, the boy was "upset, nervous, shakey, scared." He was holding his buttock with his hand, and told her that "his butt hurt." She discovered that it was red and that there was fecal material on his underpants. When she asked "why" his buttock hurt, he said that Ortega stuck "his pee-pee in his butt." He then told her Ortega had dressed him up in girl's clothes, including panties and a dress, had kissed and hugged him, and then "he put it in and went fast and made me cry, and then he stopped." The child also stated that, when he woke up in the morning, Ortega told him he was having a bad dream. She called the police.

A police officer testified that between 6:30 and 6:45 a.m. that morning, in response to his questions as to what had happened, the boy told him about Ortega's placing his penis in the boy's buttock, his having to dress up in girl's clothing, and being told that he had had a nightmare. The officer then took the mother and her two children to the hospital.

The physician who attended the boy at the hospital testified that at approximately 7:10 a.m., prior to treating the boy, the doctor asked him why he had come to the hospital. In response, the boy said, "A man put his pee-pee up my butt." The physician also testified that physical examination of the boy revealed that: (1) the skin was red, rough and irritated in the rectum; (2) there was no sign of constipation or diarrhea; (3) there was no evidence of semen; (4) there were columns of white cells in the anus which normally are not present in the area; and (5) there was no evidence of illness or disease. The physician stated that it was "very possible" that the white cells could have come from another person.

Ortega contends that allowing these witnesses to testify as to the statements made to them by the little boy was reversible error because: (1) there was a lapse of time between the alleged act of abuse and the assertions; (2) the mother's questioning immediately preceded the child's statements; and (3) there was no proof that the child was excited or that the statement was spontaneous. We disagree.

■ The excited utterance exception to the hearsay rule is defined in CRE 803(2) as: "A statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." The fact that

the statement "was made neither contemporaneously with the event nor immediately thereafter does not preclude its admissibility." *Lancaster v. People,* 200 Colo. 448, 615 P.2d 720 (1980).

■ Courts look to the effect of a particular event upon a declarant and, in the case of young children, the element of trustworthiness underscoring the excited utterance exception is primarily in "the lack of capacity to fabricate rather than the lack of time to fabricate." *People in Interest of O.E.P.,* 654 P.2d 312 (Colo.1982). This "latitude in temporal proximity is . . . a recognition of the fact that children of tender years are generally not adept at reasoned reflection and at concoction of false stories under such circumstances." *Lancaster, supra.* Here, the time interval between the alleged assault and the statements does not render them inadmissible. *See People v. Stewart,* 39 Colo.App. 142, 568 P.2d 65 (1977).

"Nor does the fact that some general questioning preceded the hearsay declarations destroy their character as excited utterances. An inquiry, especially one addressed to a child of tender years, is not sufficient in itself to undo the underlying basis in reliability for the excited utterance exception." *People in Interest of O.E.P., supra.*

■ The record also supports the conclusion that the statements related "to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." CRE 803(2). The trial court did not err in admitting the statements.

## II.

■ Ortega next contends that the court erred in allowing the People to attack his credibility by questioning him about a prior air force court martial conviction for assault with intent to commit rape. That issue was decided adversely to him in *People v. Apodaca,* 668 P.2d 941 (Colo.App. 1982), in which this court held that "a military conviction for an offense that would be punishable as a felony under the laws of Colorado is admissible for impeachment under § 13–90–101, C.R.S.1973." The crime for which he was convicted is a felony under Colorado law, and, therefore, use of this prior conviction on cross-examination for impeachment purposes was proper.

## III.

A clinical psychologist, who had been appointed by the court at Ortega's request for a competency evaluation of the victim, was called as an expert witness for the People. He testified that, based on his evaluation of the victim over a six-week period, he was of the opinion that the victim: (1) was not fabricating the story about the sexual assault; (2) had experienced a traumatic experience with a baby sitter by the name of Joe; and (3) was able to discriminate between appropriate versus non-appropriate behavior. The witness further testified that whenever the victim was approached in a verbal or nonverbal way regarding the traumatic experience a "very anxious, nervous, threatened, and fearful response was always obtained."

■ Ortega claims that admitting this testimony was error. The People argue that this was properly admitted under CRE 702 and 704. We agree with Ortega that it was error. The credibility of the child victim for truth and veracity had not been attacked at this stage in the proceedings. CRE 608(a)(2).

However, because the evidence of Ortega's guilt was so overwhelming, the admission of this testimony was harmless beyond a reasonable doubt. *See People v. Myrick,* 638 P.2d 34 (Colo.1981); *People v. Sasson,* 628 P.2d 120 (Colo.App.1980). *See also Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## IV.

Ortega next contends that he was unduly limited in his right to cross-examine the experts (physician and psychologist), the mother, and a former boy-friend of the mother. We disagree.

■ The extent to which cross-examination should be allowed rests within the trial court's discretion, *People v. Loscutoff,* 661 P.2d 274 (Colo.1983); *People v. Raffaelli,* 647 P.2d 230 (Colo.1982), and, absent an abuse of that discretion, its rulings will not be disturbed on review. *People v. Crawford,* 191 Colo. 504, 553 P.2d 827 (1976); *People v. Borrelli,* 624 P.2d 900 (Colo.App. 1980).

■ The court permitted broad latitude in counsel's questioning. In addition to other areas, the court allowed the defense to elicit testimony regarding the victim's bedwetting, bowel problems, dreams, and on a prior occasion, his having stayed with a baby sitter for six days. The mother's drug usage at the time of the incident was also explored. Both experts were extensively cross-examined on the medical and scientific basis for their opinions. The trial court did not abuse its discretion.

### V.

■ Ortega claims he was prejudiced by the destruction of evidence by law enforcement officers. We do not agree.

The day after the alleged offense occurred, pictures were taken by a sheriff's officer of the interior of Ortega's trailer, the scene of the crime. The films were taken to a commercial developer. These were returned completely black with a note that they could not be developed. The note and film were then thrown away.

We see no error in the officer's actions. Negligent or intentional destruction of material evidence by the police or prosecution may constitute grounds for sanctions. *People v. Sasson,* 628 P.2d 120 (Colo.App.1980). However, here there was no evidence to destroy.

### VI.

■ Ortega next contends that the court erred in allowing his former girl friend to testify (1) as to how he took off his shorts and his preference in panty hose, and (2) as to her opinion concerning his reputation for truthfulness. We find no error in the admission of this testimony.

If the evidence is relevant, it is admissible, CRE 402, unless its prejudicial effect outweighs its probative value. *People v. Abbott,* 638 P.2d 781 (Colo.1981). Under the circumstance here, the evidence as to shorts and panty hose was relevant, and we cannot say the court abused its discretion in ruling as it did. *See People v. Lowe,* 660 P.2d 1261 (Colo.1983).

As to the opinion testimony, the witness, as a rebuttal witness for the People after Ortega had testified, was asked whether, based on her contacts with Ortega, she had an opinion as to his truthfulness or untruthfulness. She answered that she had an opinion, which was that his credibility was very poor and she would not believe him under oath.

> CRE 608(a) provides, in pertinent part: "The credibility of a witness may be attacked or supported by evidence *in the form of opinion* or reputation, but subject to these limitations: (1) *the evidence may refer only to character for truthfulness or untruthfulness* ...." (emphasis supplied)

Thus, "the character of a witness for truth and veracity may be shown," *People v. Cole,* 654 P.2d 830 (Colo.1982), and a witness may testify as to his opinion of, or the reputation of, another witness for truthfulness or untruthfulness. *See People v. Holmes,* 191 Colo. 477, 553 P.2d 786 (1976); *People v. Taylor,* 190 Colo. 210, 545 P.2d 703 (1976).

### VII.

■ Ortega claims also that the trial court erred in admitting into evidence female clothing (four pairs of panties and a girl's dress) found in the trailer and two photographs of the victim. We disagree.

As stated in *People v. Lowe, supra:*

> "Appellate review of relevancy decisions is limited because we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected.... In addition, both the Federal and Colorado Rules of

Evidence strongly favor the admission of evidence."

"The trial court has broad discretion in determining the admissibility of photographs." *People v. Crespin,* 631 P.2d 1144 (Colo.App.1981). And, even if the admission of the victim's photographs was error, it was harmless under the circumstances of this case.

The clothing items were obtained from Ortega's trailer pursuant to a search warrant which Ortega contends was overbroad, therefore making the search and seizure unlawful. However, even if we assume that these items should have been suppressed and not admitted into evidence, the error, if such did occur, was harmless. *See Early v. People,* 178 Colo. 167, 496 P.2d 1021 (1972).

### VIII.

■ Ortega cites several statements made by the prosecutor during closing argument which he claims were improper. However, there was no contemporaneous objection made to any of them, and none were assigned as error in his new trial motion. In context these were fair comment on the evidence, and in any event, were not so egregious as to constitute plain error. *See People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978).

### IX.

■ Ortega claims error in the court's refusal to give a tendered jury instruction concerning children under ten years of age not being competent to testify. *See* § 13–90–106, C.R.S.1973. We see no error here. The child victim was not called as a witness and did not testify. And, even if his age made him incompetent to testify—an issue not presented to the trial court—this incapacity does not vitiate admission of his statements under the excited utterance exception to the hearsay rule. *Lancaster v. People, supra.*

### X.

■ Finally, contrary to Ortega's assertion, the evidence supports the conviction.

Judgment affirmed.

STERNBERG, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent.

The majority concludes that admission of the testimony of the clinical psychologist to bolster the veracity of extrajudicial statements of the victim, although error, was, nevertheless, harmless beyond a reasonable doubt because the evidence of Ortega's guilt was so overwhelming. In order to have reached this result, the majority must have found that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). I cannot say, in this case, that there is no reasonable possibility that the testimony of the psychologist adversely influenced the jury against the defendant. Thus, I do not agree that the requirements of the harmless error rule have been met.

"An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in *Fahy v. Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Applying the *Chapman* standard here, I have no doubt that the error in admitting

the psychologist's testimony was not harmless to the defendant. The district attorney chose not to call the child as a witness, and the entire case against the defendant depended upon the veracity of the extrajudicial statements made by the boy. If the jury doubted the child's truthfulness, the entire case against the defendant collapsed.

The district attorney recognized the weakness in the case caused by the absence of the victim. To fill this void, he introduced into evidence two snapshots of the child having marginal relevance at best, and called a clinical psychologist to assure the jury of what it could not observe for itself from the child's demeanor, namely, his appearance of truthfulness. The testimony thus received was that the child was "able to tell right from wrong, [and] there were indicators that showed that the boy was able to discriminate between appropriate versus non-appropriate behavior." The psychologist also testified that it was his opinion that the child was not fabricating the sexual assault. Carrying the imprimatur of the psychologist's expertise, *see United States v. Fosher,* 590 F.2d 381 (1st Cir. 1979); *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505 (2d Cir.1977), this testimony told the jury what it most needed to know: the victim was truthful.

It may be that the jury would have convicted Joseph Ortega even without the clinical psychologist's testimony. However, I cannot say, beyond a reasonable doubt, that it would have done so. It is *possible* that the admission of this testimony contributed to the conviction, and it being possible, then the defendant is entitled to a reversal and a new trial which is consonant with due process principles.