## No. 24749.

THE PEOPLE OF THE STATE OF COLORADO *v.* JEFFREY NELSON.
(474 P.2d 158)

Decided September 8, 1970.

Martin G. Dumont, District Attorney, James H. Moore, Deputy, for plaintiff-appellee.

Joseph E. Edwards, Jr., for defendant-appellant.

*En Banc.*

Mr. Justice Kelley delivered the opinion of the Court.

The defendant is charged with possession of a narcotic drug, namely, cannabis, in violation of the laws of Colorado. C.R.S. 1963, 48-5-2.

This is an interlocutory appeal under C.A.R. 4.1 from a decision of the District Court in and for Pitkin County, denying one part of a three-part motion to suppress evidence. The trial court granted the motion to suppress (1) evidence seized from defendant's Volkswagen by virtue of a search warrant issued without the affidavit required by (i) Crim. P. 41(c), (ii) 1965 Perm. Supp., C.R.S. 1963, 48-5-11(3), and (iii) Colo. Const. Art. 11, Sec. 7; and (2) evidence seized in defendant's room at the Dorm by virtue of a consent to search, which the court found to have been obtained "at the interrogation, which took place at approximately 12:00 to 12:30 A.M., January 26, 1970"; the court finding that the consent to search was the product of a confrontation of the defendant with the evidence previously illegally seized under the void search warrant and, further, a product of a late night interrogation, and that said signatures and statements were not voluntarily made.

The evidence which the court refused to suppress was, as it appears in the court's order,

"* * * the brass pipe and the contents of said pipe recovered from the person of the defendant upon a search incident to the original arrest * * *."

The court held that the defendant's arrest was *lawful*. The sole question for our determination is whether the arrest was in fact *lawful* under the circumstances of this case when tested by the state and federal constitutional provisions relating to search and seizure. Our review of the law and examination of the facts lead us to the conclusion that the trial court erred. We must reverse.

We recognize the proposition set forth by the United States Supreme Court in 1891, that

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. R. Co. v. Botsford,* 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889, the United States Supreme Court reminds us that,

"* * * courts still retain their traditional responsibility to guard against police conduct which trenches upon personal security without the objective evidentiary justification which the Constitution requires. * * *"

The Fourth Amendment to the United States Constitution and Article II, Section 7 of the Constitution of Colorado protect "the people," not from *all* searches and seizures, but from those which are "unreasonable." This is true whether the *seizure* is of the person or his property.

It is a fundamental truth that a valid arrest must be based upon probable cause. In *Gallegos v. People,* 157 Colo. 173, 401 P.2d 613, Mr. Justice Pringle advised:

" 'Probable cause' was defined as early as 1897 in *Stacey v. Emery,* 97 U.S. 642, 645, 24 L.Ed. 1035, as a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious man to believe that an offense has been or is being committed by the person arrested. See also, *Gonzales v. People, supra.* Vague

suspicion does not rise to the dignity of probable cause. * * *"

■■ As noted in *People v. Gurule*, 172 Colo. 159, 471 P.2d 413, each case must be determined on its own particular facts. It is imperative that the relevant facts be judged against an objective standard. Such a standard is stated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441, in these words:

"* * * It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see *Henry v. United States*, 361 U.S. 98, 101, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause — evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, *Carroll v. United States*, 267 U.S. 132, 162 — must be measured by the facts of the particular case. * * *"

■ The Colorado statute authorizes an officer to make an arrest without a warrant "when a criminal offense has, in fact, been committed, and he has reasonable grounds for believing that the person to be arrested has committed it." C.R.S. 1963, 39-2-20. This statutory provision is consonant with the case law of the United States Supreme Court and this court.

Turning now to the factual situation to which the principles outlined above must be applied, the record discloses that about midnight, January 25, 1970, Parker, a merchant patrolman, while patrolling in his pickup truck, passed two men in a blue Volkswagen driving in the opposite direction. Long poles were protruding from the car which Parker thought were strips of molding. Thinking the strips might have been stolen from a construction company customer, Parker turned his truck around and followed the Volkswagen. When the car stopped in front of "The Dorm," a rooming house, Parker discovered that the strips were bamboo poles of the kind to mark ski slopes.

Nevertheless, Parker, still suspicious, notified the Aspen Police Department. Officer Wall responded. When he arrived the defendant was driving away to park the vehicle and the other occupant of the car, Mayhood, was carrying the poles up the stairs of the boarding house. Wall approached Mayhood and asked if the poles belonged to him. Mayhood stated that the poles belonged to the defendant; that they had obtained them at Snowmass.

The officer further testified:

"* * * And I asked him, 'Where at Snowmass?' He couldn't answer that question. He told me that, 'I guess we made a mistake,' and could they just take the poles back. And I told him no, and I then arrested him for theft of the bamboo slalom poles."

When the defendant returned the officer stated, "Hi Jeff, you're under arrest."

The foregoing constitutes all of the information upon which Officer Wall had to base "probable cause" for making the arrest. Was there *probable cause* or was it only *vague suspicion?*

 ██ The arrest of the defendant can only be justified by the information available to the officer immediately prior to the arrest. The discovery of contraband on the person of one who is unlawfully arrested does not validate an arrest. *Gallegos v. People,* 157 Colo. 173, 401 P.2d 613; *Wilson v. People,* 156 Colo. 243, 398 P.2d 35; *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081.

It should be kept in mind that Nelson was not arrested because the officer believed that Nelson had marijuana in his possession; the arrest was based on the assumption by the officer that the bamboo poles had been stolen.

The only articulable fact to which the police officer can point to warrant his arrest of the defendant is the statement attributed to Mayhood by Officer Wall that, "'I guess we made a mistake,' and could they just take the poles back."

There had been no report of the theft of slalom poles at the time of the arrest nor at the time of the hearing. So far as the record discloses no charge was ever filed against the defendant or Mayhood involving the theft of the poles. In fact, the mistaken suspicion of Parker that the poles were strips of moulding stolen from a contractor triggered the police investigation. The officer had no knowledge of any offense being committed in his presence, which would have justified the arrest, and he had had no report of any crime having been committed in the area by anyone resembling the defendant. And neither Wall nor Parker had seen either the defendant or Mayhood at any time previous to the time of the arrest, nor did they have any derogatory information of any nature in reference to the defendant or Mayhood.

It was approximately two weeks after defendant's arrest before the police interrogated him about the poles. He was still in jail. He apparently satisfied them as to his rightful possession of them because there is no indication in the record that the police officers up to the time of the suppression hearing had made any attempt to disprove his story. It is a fair inference that had Officer Wall asked the defendant the same question that he had asked Mayhood the suspicion engendered by Mayhood's answer would have been allayed.

The evidence which forms the basis of the present prosecution was turned up by a station-house search of the defendant's clothing following his unlawful arrest.

We conclude from the foregoing that the facts available to the officer at the moment of arrest were not sufficient to warrant a man of reasonable caution to believe that the action taken was appropriate. *Terry v. Ohio, supra; People v. Gurule, supra; Gallegos v. People, supra*. Any evidence obtained under such circumstances is not admissible.

As noted in *Gurule*, the courts have a responsibility to guard against police conduct which is overbearing or harassing in order to protect the consti-

tutional rights of the individual. The arrest of the defendant was "unreasonable" when tested by the need to arrest under the exigencies of the situation against the invasion of the privacy which the arrest entailed. See *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed. 2d 930; *People v. Gurule, supra.*

The order of the trial court denying the suppression of evidence seized from the clothing of the defendant at the police station is reversed.

MR. JUSTICE LEE not participating.