The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Larry L. TRIANTOS, Defendant–Appellee.

No. 02SA97.

Supreme Court of Colorado, En Banc.

Sept. 23, 2002.

---

Frank J. Daniels, District Attorney, Brian J. Flynn, Deputy District Attorney, Grand Junction, Colorado, for Plaintiff–Appellant.

Nugent & Palo, LLC, Edward J. Nugent, Grand Junction, Colorado, for Defendant–Appellee.

Justice KOURLIS delivered the Opinion of the Court.

Police arrested defendant Larry Triantos for possession of drug paraphernalia, a class two petty offense. Conducting a routine search of Defendant during "booking," deputies discovered a bag of methamphetamine. In a pre-trial hearing, the judge granted Defendant's motion to suppress the substance. The judge construed section 16–2–201, 6 C.R.S. (2002), as requiring a police officer confronting someone suspected of a class two petty offense to issue a summons rather than to arrest that person unless "circumstances reasonably persuade the officer that the alleged offender is … unlikely to comply with the terms of the [summons]." Because the prosecution offered no evidence that the officer was so persuaded, the court found defendant's full custodial arrest illegal.

Contrary to the trial court, we conclude that the statute is permissive, and allows an officer to decide whether to arrest or release a suspect, based upon a consideration of whether the individual is likely to appear as required in a summons. That decision can precede or follow a custodial arrest.

In this instance, the officers indisputably had probable cause to arrest the defendant, based upon their viewing of drug paraphernalia in his home. They arrested the defendant, and discovered illegal substances in a "booking" search of his person. That procedure is not prohibited by the statute, and accordingly, we reverse.

## I. Facts

Two police deputies responded to defendant's residence after learning of an alleged burglary in progress. Finding nothing unusual outside the home, the deputies requested their dispatcher to phone the occupants reporting the burglary and have them step outside. Soon after, defendant exited the home behaving in a manner that caused the deputies to believe he was under the influence of a controlled substance. One deputy described defendant as "real, real agitated," and as having "very large" pupils. The dep-

uties spoke with defendant and continued investigating the exterior premises at defendant's direction. The deputies eventually requested and received permission to enter the house. Once inside, they observed a spoon that one deputy described as "bent in the way that I've seen spoons bent that's used for heating up methamphetamines." The deputies saw two additional similarly bent spoons in the bathroom. The deputies saw no evidence that a burglary had occurred. Returning with defendant outside, the deputies advised him that he was under arrest, took him into custody, and transported him to the police station.

At the station, police conducted a full search of defendant as part of routine intake procedures. The search revealed a bag of methamphetamine in defendant's pocket.

The prosecution eventually charged Defendant with possession of a schedule II controlled substance (the methamphetamine),[1] unlawful use of a schedule II controlled substance (the methamphetamine),[2] and possession of drug paraphernalia (the spoons).[3] Defendant filed a motion to suppress the methamphetamine. In a pre-trial hearing, the trial court granted the motion after interpreting section 16–2–201, 6 C.R.S. (2002), as *requiring* police to issue a summons rather than to arrest a suspect alleged to have committed a class two petty offense. The state then filed this interlocutory appeal under C.A.R. 4.1.

## II. Law

The Fourth Amendment to the United States Constitution does not prohibit police from effecting a full custodial arrest and conducting a search incident thereto for misdemeanors and petty criminal offenses perpetrated in an officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 326, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (approving full custodial arrest for misdemeanor seatbelt offense); *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (upholding search incident to ar-

1.  § 18–18–405(1), (2)(a)(I), 6 C.R.S. (2002).

2.  § 18–18–404(1)(a), 6 C.R.S. (2002).

3.  § 18–18–428, 6 C.R.S. (2002).

rest where defendant drove a vehicle without a license and the original arrest was lawful). Colorado's constitution also presumes that an arrest for a criminal violation when predicated upon probable cause is permissible for any crime, not just a serious crime. *People v. Wolf,* 635 P.2d 213, 217 (Colo.1981); *People v. Nelson,* 172 Colo. 456, 460, 474 P.2d 158, 161 (1970).

Thus, any limit on the officer's search here is statutorily mandated. Section 16–2–201 reads as follows:

> (1) When a person is arrested for a class 2 petty offense, the arresting officer may either give the person a penalty assessment notice and release him upon its terms or take him before a judge of the county court in the county in which the alleged offense occurred. The choice of procedures shall be based upon circumstances which reasonably persuade the officer that the alleged offender is likely or unlikely to comply with the terms of the penalty assessment notice. Such circumstances may include the officer accompanying the offender to a post office or mailbox and witnessing the deposit in the mail of the notice with payment of the fine attached.

*Id.* An additional statute is applicable here, although not cited by the parties: "(1) A peace officer may arrest a person when: ... (b) Any crime has been or is being committed by such person in his presence." § 16–3–102, 6 C.R.S. (2002).

When interpreting statutes, our primary task is to ascertain and give effect to the intent of the legislature in enacting them. *Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 284 (Colo.2000); *People v. Guenther,* 740 P.2d 971, 975 (Colo.1987). We give statutory terms their commonly accepted meaning to discern that intent. *Guenther,* 740 P.2d at 975. When the language is unambiguous and the legislative intent reasonably clear, we need not resort to other rules of statutory construction. *People v. Meredith,* 763 P.2d 562, 564 (Colo.1988). The legislature's use of the term "may" is indicative of a grant of discretion or choice among alternatives. *Id.*

Section 16–3–102 permits an officer to arrest a person who has committed a crime in the officer's presence. *Id.* ("A police officer always has the statutory authority to arrest an individual whom the officer observes committing a misdemeanor."). There is no question that the possession of drug paraphernalia here took place in the presence of both deputies. Hence, those deputies had unequivocal statutory authority to arrest Defendant.

The question then becomes whether section 16–2–201 operates to limit that authority or is possibly inconsistent with section 16–3–102. Under the interpretation proffered by the trial judge, officers lack authority, despite section 16–3–102, to arrest a class two petty offender unless convinced that the suspect will fail to comply with the penalty notice.

"If a statute potentially conflicts with another statute, a court must attempt to harmonize them to effectuate their purposes." *People v. Hampton,* 876 P.2d 1236, 1240 (Colo.1994). "When construing two statutes respecting the same or similar subject matter, full effect must be given to both legislative provisions." *People v. Hamilton,* 666 P.2d 152, 155 (Colo.1983) (citing *Buck v. Dist. Ct.,* 199 Colo. 344, 608 P.2d 350 (1980)).

Harmonizing these statutes requires little effort. An officer *may* arrest when a crime occurs in his or her presence. § 16–3–102. When that crime is a class two petty offense, the arresting officer *may* either take the arrested suspect before a judge, or release the suspect after issuing a penalty assessment. § 16–2–201. Police compliance with both statutes is achieved because, even though they conduct a full custodial arrest and search, police "may" still release the offender without taking him before a judge. In short, a custodial arrest and a discretionary release are not mutually exclusive under section 16–2–201.

We do not construe the legislature's use of the word "shall" in the phrase, "[t]he choice of procedures *shall* be based upon circumstances which reasonably persuade the officer that the alleged offender is likely or unlikely to comply," as abrogating or constraining an arresting officer's discretion. § 16–2–201. Rather, the term mandates the

basis for a release decision: to wit, the officer shall base any release decision upon consideration of whether the suspect will or will not comply with the notice.

Furthermore, we hold that the choice of whether to release the offender or take him before a judge remains even after effectuating a custodial arrest and conducting a search incident thereto. An officer could issue a penalty assessment notice at the police station upon being convinced that the offender would comply with the notice. Indeed, the officers here may well have so chosen had the custodial search not revealed the methamphetamine. In sum, the statute grants arresting officers discretion to release or not, but nothing indicates the arrest cannot be a full custodial arrest, and the release after a search incident thereto.

The trial judge relied heavily on *People v. Bland*, 884 P.2d 312 (Colo.1994). There, this court construed a similar statute, 18–18–406, 8B C.R.S. (1994 Supp.). That statute reads:

> Whenever a person is arrested or detained for a violation of [this statute], the arresting or detaining officer shall prepare a written notice or summons for such person to appear in court.... The arrested or detained person, in order to secure release from arrest or detention, shall promise in writing to appear in court by signing the notice or summons prepared by the arresting or detaining officer.

*Bland*, 884 P.2d at 315 (quoting § 18–18–406). The defendant in *Bland* was arrested for possession of less than one ounce of marijuana, but the search conducted incident to that arrest revealed a baggy of cocaine on defendant's person. *Id.* at 314. The trial court suppressed the cocaine, ruling that the officers should have issued a summons instead of effecting a full-custodial arrest and conducting a search incident thereto. *Id.* at 315.

However, this court reversed the suppression order. *Id.* at 322. We held that, "the statute requires the officer to issue a summons and thus prohibits custodial arrests but does not prohibit non-custodial arrests and lawful searches incident to such arrests." *Id.* at 315–16.

The statute in *Bland* is distinguishable from the one here. When a statute mandates that an officer issue a summons and complaint, thereby removing any discretion, officers may effect only a non-custodial arrest. As we observed in *Bland*, the statute "requires an officer to issue a written notice and summons to a person possessing one ounce or less of marihuana and does not permit a custodial arrest for such an offense." *Id.* at 314. However, when a statute gives police a choice of procedures, as here, even though consideration of certain criteria is mandatory, such statute does not limit an officer's ability to carry out a full custodial arrest. Because the statutory language is clearly distinguishable, the holding in *Bland* does not control.

### III. Conclusion

Absent statutory language to the contrary, police officers retain the authority to arrest for petty offenses committed in their presence. While section 16–2–201 does restrict the basis upon which an officer can release a petty offender, nothing in that statute requires that the release occur. We believe this interpretation gives effect to the intent of the legislature and harmonizes section 16–2–201 with section 16–3–102. Therefore, the suppression order of the trial court is reversed and the case remanded for proceedings consistent with this opinion.