PLAINS METROPOLITAN DISTRICT, a quasi-municipal corporation and political subdivision of the State of Colorado, Plaintiff–Appellee,

v.

KEN–CARYL RANCH METROPOLITAN DISTRICT, a quasi-municipal corporation and political subdivision of the State of Colorado, Defendant–Appellant,

and

Jan Rousselot; Ruth Sunderberg; and Patricia Lynch, Intervenors–Appellants.

No. 09CA0425.

Colorado Court of Appeals, Div. IV.

March 18, 2010.

Ryley Carlock & Applewhite, John L. Watson, Olivia D. Lucas, Denver, Colorado, for Plaintiff–Appellee.

Shearer & Call, P.C., Richard L. Shearer, J. Alan Call, Denver, Colorado, for Defendant–Appellant and Intervenors–Appellants.

Mary G. Zuchegno, Denver, Colorado, for Amicus Curiae Special District Association of Colorado.

Opinion by Judge CONNELLY.

This dispute, regarding the duty to construct neighborhood recreational facilities, involves adjoining metropolitan districts in Jefferson County, Colorado. The claims now before us were filed by Ken–Caryl Ranch Metropolitan District (KC) and three of its taxpayers against Plains Metropolitan District (Plains). After a bench trial, the trial court entered judgment for Plains.

The principal dispute involves whether a service plan providing that Plains "will" build specified recreational facilities obligates Plains to build those facilities. We hold that it does, unless Plains can demonstrate that plan compliance is no longer "practicable."

Our holding is based on the mandatory language in the plan itself and on a statutory provision stating that special district facilities and services "shall conform so far as practicable to the approved service plan." § 32–1–207(1), C.R.S.2009. We further hold that a special district's violation of its service plan can be remedied under section 32–1–207(3)(a), C.R.S.2009. We finally hold that, even though KC's claims might otherwise have been untimely, KC's right to assert them as compulsory counterclaims was revived by section 13–80–109, C.R.S.2009. We

accordingly reverse the judgment for Plains and remand for further proceedings.

## I. Background

All property owners within the KC and Plains districts must belong to the Ken–Caryl Ranch Master Association (Association). The Association could have used homeowners' dues to build facilities and perform services for the community. But funding those activities through special district taxes, rather than association dues, provided tax benefits to property owners.

Plains was created as a special district within the Ken–Caryl community by a 1986 court order. The order approved a 1985 service plan that previously had been reviewed and approved by Jefferson County authorities.

The 1985 service plan provided that "[t]he recreational facilities to be designed and constructed by [Plains] will include a swim and tennis facility and a ball field park" consisting of three fields. These facilities were to be operated, maintained, and ultimately owned by the Association. The service plan called for the facilities to be included in the first construction phase in 1986, but also contained a "flexibility" provision allowing Plains to "postpone" construction "if necessitated by a slowdown of development as caused by economic or other factors."

KC, in turn, was created as a special district by a 1988 court order. It too was located within the Ken–Caryl community, but its boundaries did not overlap with the Plains district. Excluding the properties located in Plains from the new KC district benefited the Plains property owners by allowing them to avoid being taxed for services that KC would provide to the entire Ken–Caryl community.

By 1996, Plains still had not built the recreational facilities. In January 2002, Plains indicated that it would dissolve as a district in 2004 (when the existing bond debt was due to be paid off), without building the recreational facilities. Litigation ensued.

KC asserted the claims now at issue, involving the recreational facilities, as counterclaims to Plains' lawsuit against KC. Plains' lawsuit had challenged KC's expansion of its district boundaries to include property within Plains. Plains' lawsuit was later settled, with the districts agreeing to maintain their prior boundaries.

The case proceeded to a bench trial on KC's counterclaims, which were joined in by three KC taxpayers. The court ruled for Plains by reasoning that the service plan was simply a "permissive" "guide"—one providing "authority to act but not requiring [Plains] to do so." It ruled, alternatively, that the claims were time barred.

## II. Discussion

### A. Merits

The trial court's ruling that Plains had no judicially enforceable obligation to construct the facilities rested on an interpretation of both this specific service plan and the law governing special districts. Our review of both points is de novo. *See Wolf Ranch, LLC v. City of Colorado Springs*, 220 P.3d 559, 563 (Colo.2009) (statutory interpretation is de novo); *Denver Found. v. Wells Fargo Bank*, 163 P.3d 1116, 1122 (Colo.2007); *Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98, 102 (Colo.App.2008).

#### 1. The Mandatory Language of Plains' Service Plan

■ The language in the 1985 service plan regarding the building of recreational facilities is not phrased in merely permissive terms. The plan provides that "[t]he recreational facilities to be designed and constructed by [Plains] *will* include a swim and tennis facility and a ball field park," that they "*will* include a swim pool, 2 tennis courts and a restroom and mechanical building," and that the "ball field park *will* consist of 3 combination softball/soccer field[s]." (Emphases added.)

Statutory provisions that an entity "will" do something typically are construed, like those using the term "shall," as mandatory. *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (statute and regulations went "beyond simple procedural guidelines" by using "language of an unmistakably mandatory character, requiring

that certain [prison] procedures 'shall,' 'will,' or 'must' be employed"), *abrogated in part by Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *In re Airadigm Communications, Inc.*, 519 F.3d 640, 656 (7th Cir.2008) (describing "shall" and "will" as "mandatory terms"); *Britell v. United States*, 372 F.3d 1370, 1378 (Fed.Cir. 2004) ("mandatory language" such as " 'will pay' and 'shall pay' creates the necessary 'money-mandate' " to waive sovereign immunity).

Likewise, contractual provisions that a party "will" do something usually create mandatory obligations. *See, e.g., McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 346–47 (8th Cir.1985); *Terra International, Inc. v. Mississippi Chemical Corp.*, 922 F.Supp. 1334, 1373–74 (N.D.Iowa 1996), *aff'd*, 119 F.3d 688 (8th Cir.1997). In contrast, "use of the term 'may' is indicative of a grant of discretion or choice among alternatives." *People v. Triantos*, 55 P.3d 131, 134 (Colo.2002).

The mandatory obligation to build the recreational facilities is confirmed by the service plan's "flexibility" clause allowing Plains to "postpone construction of improvements if necessitated by a slowdown in development as caused by economic or other factors." Absent an obligation to construct the facilities, Plains would not need authority to "postpone construction." Accepting Plains' contention would render this flexibility provision meaningless and thereby contravene normal rules of construction. *See Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d 692, 697 (Colo.2009) (courts "harmonize" and "give effect to all provisions so that none will be rendered meaningless") (internal quotations omitted).

Plains implicitly recognized the mandatory nature of its plan when it tried to amend the language from "will" to "may" in 2005. But Plains indisputably did not follow the procedures for "material modifications of the service plan," § 32–1–207(2), C.R.S.2009. The trial court, while criticizing Plains' "disingenuous" action, deemed the amendments immaterial because "will" meant the same as "may" in this context. For reasons set forth above, however, "will" is different than "may" in the 1985 service plan. Accordingly, Plains' attempted 2005 amendments were material—and legally invalid.

### 2. The Enforceability of Mandatory Service Plans

■ The question, therefore, is whether courts can compel special districts to comply with mandatory terms of their service plans. We hold such plans are enforceable under the Special District Act.

The General Assembly has provided that "the facilities, services, and financial arrangements of the special district shall conform so far as practicable to the approved service plan." § 32–1–207(1). This statutory language, like the 1985 service plan, uses mandatory language ("shall conform"). The extent of required conformance is prescribed as "so far as practicable." Thus, unless for some reason it is not practicable to do so, special districts must conform to their service plans.

Section 32–1–207(3)(a) empowers a court—acting sua sponte or upon motion of the county or municipal board or "any interested party"—to enjoin a district's material departure from the plan. Plains has not argued that the recreational facilities were only an immaterial part of the plan. Accordingly, injunctive relief is expressly authorized by statute. And where the material departure from a service plan involves inexcusable inaction, such relief may take the form of a mandatory injunction. *See* C.R.C.P. 65(f).

The parties disagree whether it remained "practicable" for Plains to build the facilities. Because the trial court made no finding on this issue, we agree with Plains' alternative suggestion that the case should be remanded to the trial court to decide this issue in the first instance. The trial court, after hearing any further evidence on this point that it may deem necessary, should issue findings and conclusions as to the practicability of Plains' building the recreational facilities provided for in the 1985 service plan.

### B. Procedural Issues

#### 1. Pleading of the Counterclaims

■ The counterclaims unmistakably alleged that Plains was not complying with its

"duty" under the 1985 service plan to build the recreational facilities, and they unmistakably sought a court order compelling Plains to build the facilities. The counterclaims pertaining to the 1985 plan, however, did not specifically allege a statutory cause of action or cite provisions governing "compliance" with and judicial "enforcement" of service plans, § 32–1–207(1) & (3)(a). Rather, in seeking to enforce Plains' 1985 service plan, the counterclaims relied on contract and promissory estoppel theories.

Plains is correct that the Special District Act—not common law contract doctrines—controls the extent to which special districts must comply with, and courts can enforce, service plans. The Act's specific provisions requiring conformance "so far as practicable" to service plans, § 32–1–207(1), may not be trumped by resorting to more general common law theories. Likewise, section 32–1–207(3)'s procedures control over more general theories of enforcement. *Cf. Silver Eagle Services, Inc. v. Public Utilities Comm'n,* 768 P.2d 208, 212–14 (Colo.1989) (public utilities statute provides "exclusive method" for challenging PUC decisions).

We disagree with Plains, however, that the counterclaimants forfeited their right to enforce the 1985 service plan by using incorrect labels. Plains cannot show any prejudice from the incorrect labeling. To the contrary, Plains' trial court pleadings show it always understood the thrust of the counterclaims. Its pleadings reflected an understanding that "[a]t bottom," the counterclaims were under section 32–1–207. *See, e.g.,* Plains' 7/18/08 Trial Br., at 4–5. And, beginning with their own trial brief (KC–Taxpayer 7/23/08 Trial Br., at 23–24), and then throughout trial, counterclaimants explicitly addressed the statute.

■ Under modern rules of pleading, courts look to the "essence of a claim regardless of how it is denominated." *Bainbridge, Inc. v. Travelers Casualty Co.,* 159 P.3d 748, 755 (Colo.App.2006); *see also Hutchinson v. Hutchinson,* 149 Colo. 38, 41, 367 P.2d 594, 596 (1961) ("The substance of the claim rather than the appellation applied to the pleading by the litigant is what controls."); *Sheffield Services Co. v. Trowbridge,* 211 P.3d

714, 718 (Colo.App.2009) ("the claim's substance rather than [its] appellation ... controls"). The supreme court applied this principle to allow restitution even though the "counterclaim [ ] did not label the[ ] cause of action as one based upon a theory of unjust enrichment, nor did [it] specifically seek restitution." *Martinez v. Continental Enterprises,* 730 P.2d 308, 318 n. 13 (Colo.1986); *see also Trowbridge,* 211 P.3d at 718–19 (corporate veil pierced even though complaint did not expressly seek relief on that theory).

■ Here, though the counterclaims were incorrectly labeled, the substance of the requested relief was clear and consistent with the statute. Precluding relief based on a misnomer in the cause of action "would improperly elevate form over substance." *Trans Shuttle, Inc. v. Public Utilities Comm'n,* 58 P.3d 47, 48 (Colo.2002).

### 2. Statute of Limitations

■ Plains finally contends that the challenges to its failure to build the facilities are time barred. The trial court ruled that KC and the taxpayers knew or should have known by the 1990s that Plains would not build the facilities, such that their 2004 challenge to Plains' inaction was untimely. We need not address the correctness of this ruling because we conclude in any event that KC properly raised its challenges as counterclaims filed pursuant to the counterclaim revival statute, § 13–80–109.

The timeliness of KC's challenges under the counterclaim revival statute raises two subsidiary issues: (a) whether the statute applied to KC's claims; and, if so, (b) whether those claims stayed revived once Plains' lawsuit was dismissed. We review these issues of statutory construction de novo. *Wolf Ranch,* 220 P.3d at 563.

### a. Revival of Counterclaims

■ KC relies on section 13–80–109's second sentence, which states: "A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter."

The evident "purpose" of this statute "is to allow a party against whom a claim has initially been asserted to plead a stale claim" as a counterclaim in certain circumstances. *Duell v. United Bank*, 892 P.2d 336, 340–41 (Colo.App.1994), *followed by Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1168–69 (10th Cir.2000).

The statutory language—requiring that the counterclaim "aris[e] out of the transaction or occurrence which is the subject matter of the opposing party's claim," § 13–80–109—tracks the "compulsory counterclaim" rule, C.R.C.P. 13(a). Accordingly, revival turns on whether the counterclaim was a compulsory one. *Skyland Metropolitan Dist. v. Mountain West Enterprise, LLC*, 184 P.3d 106, 123–24 (Colo.App.2007). We make that determination de novo. *Allen v. Martin*, 203 P.3d 546, 555 (Colo.App.2008).

■■ A counterclaim is compulsory if it is "logically related" to the subject matter of the opposing party's claim. *Visual Factor, Inc. v. Sinclair*, 166 Colo. 22, 26, 441 P.2d 643, 645 (1968); *Dinosaur Park Investments, L.L.C. v. Tello*, 192 P.3d 513, 517 (Colo.App. 2008). Logical relationship "is a broad, flexible, and practical standard, which prevents the filing of a multiplicity of actions and encourages the resolution of all disputes arising out of a common factual matrix in a single lawsuit." *Allen*, 203 P.3d at 556 (internal quotations omitted). A counterclaim may be compulsory where the factual and legal issues in both it and the complaint are "offshoots" of the same controversy. *Skyland*, 184 P.3d at 124.

We conclude there was a logical relationship between Plains' complaint and KC's counterclaim, such that the latter was a compulsory one that triggered the revival statute. Plains' complaint asserted that KC violated the Special District Act by expanding its service district to include property already in Plains' district. That Act prevents a district from organizing within the boundaries of "an existing special district *providing the same service*," unless various approvals are received. § 32–1–107(2) & (3)(b), C.R.S. 2009 (emphasis added). And it states that "[n]othing ... shall prevent a special district *providing different services* from organizing

wholly or partly within an existing special district." § 32–1–107(2).

The merits of Plains' now-settled complaint and KC's possible defenses thereto are not before us; it suffices to note that the services being provided (or not provided) by Plains and KC were at least potentially relevant to resolving the complaint. Accordingly, KC's counterclaim seeking to compel Plains to perform services was logically related to Plains' complaint regarding the districts' boundaries: the counterclaim arose out of the same transaction or occurrence as the complaint so as to trigger the revival statute.

b. Continuing Viability of Revived Counterclaims

■ Plains contends that because the statute "is meant to operate defensively," KC's counterclaims once again became time barred when the complaint was dismissed. We cannot agree; nothing in the statute makes revival evanescent.

■ The statute is not limited to "defensive" operation. That contention might have more force if only setoffs were revived. But the statute revives "counterclaim[s]" as well. While a counterclaim "includes both setoff and recoupment," it "is broader than either in that it includes other claims and may be used as a basis for affirmative relief." *Shump v. Balka*, 574 F.2d 1341, 1346 (10th Cir.1978); *see also Nelson v. Meyer*, 66 Colo. 164, 165–67, 180 P. 86, 87–88 (1919) (recognizing that counterclaim may seek greater recovery against plaintiff than plaintiff sought in complaint).

Plains' reliance on *Duell* and *Atlantic Richfield* is misplaced. The holdings in those cases were that no counterclaim triggered the statute: in *Duell*, because the claim was first asserted in a complaint (and re-pled as a counterclaim to a counterclaim), 892 P.2d at 340–41; and in *Atlantic Richfield*, because the claims were asserted by intervenors, 226 F.3d at 1168–69. The Circuit's references to "defensive" counterclaims, *id.*, were to the parties asserting the claims and not to the specific relief being sought.

Having rejected Plains' premise, we also reject its conclusion. We hold that once a compulsory counterclaim is revived, it does not morph back into a time-barred claim once the complaint goes away.

Our holding is consistent with case law under an Illinois counterclaim revival statute holding that once revived, otherwise stale counterclaims stay revived even if the complaint that triggered revival is later dismissed. *See, e.g., Barragan v. Casco Design Corp.,* 216 Ill.2d 435, 297 Ill.Dec. 236, 837 N.E.2d 16, 24 (2005); *Ogg v. City of Springfield,* 121 Ill.App.3d 25, 76 Ill.Dec. 531, 458 N.E.2d 1331, 1337 (1984), *cited with approval on a more general point in Duell,* 892 P.2d at 341. It is inconsistent with the *Duell* concurrence that viability of an otherwise stale counterclaim is "contingent upon [the plaintiff's] claims being actively pursued." 892 P.2d at 343 (Tursi, J., specially concurring). But the *Duell* majority did not adopt that conclusion, and the concurrence offered no authority or reasoning in support of it.

### C. Appellate Attorney Fees

Plains finally contends that certain arguments made by KC and the taxpayers in this appeal lacked substantial justification, such that Plains should be awarded appellate attorney fees under section 13–17–102, C.R.S. 2009. We deny this request. None of the appellate arguments in this case was frivolous, and our reversal of the judgment demonstrates that the appeal was justified.

### III. Conclusion

The judgment in favor of Plains is reversed. The case is remanded to the trial court to determine whether it is now practicable for Plains to build some or all of the recreational facilities in question.

Judge WEBB and Judge TERRY concur.